# H. WEBSTER FOXWELL

*vs.*

# HATTIE M. FOXWELL.

*Decrees: striking out; after enrollment; fraud and surprise.*
*Divorce proceedings: suppres-*
*sion of facts.*

Where process has been regularly served upon the defendant and he fails to appear and make defense, and a judgment is regularly entered against him, a strong case must be presented to justify the Court in striking out the judgment after the lapse of the term, or the enrollment of the decree; and the Court will not interfere with the judgment in such a case unless the facts produced clearly establish fraud, deceit, surprise or irregularity in obtaining the same, and show that the defendant has acted *bona fide* and with reasonable diligence in making the application.                                                        p. 272

In general, after the enrollment of a decree, in the absence of fraud, surprise or irregularity, an error in the decree will not be corrected, or a rehearing granted, upon a mere petition; the proper form of proceeding in such a case is by a bill of review, or an original bill for fraud; but the procedure may be by petition when the case was not heard on its merits, and

where, it is alleged that the decree was entered by mistake or surprise, or under circumstances which satisfy the Court, in the exercise of sound discretion, that the enrollment ought to be discharged and the decree set aside.                    p. 273

The reasons for permitting the setting aside of a decree entered by mistake, surprise, etc., exist more strongly in divorce proceedings than in other cases.                    p. 273

In divorce proceedings, which are often not contested, and where collusion may exist between the parties, the public has a peculiar interest which is in the care of the tribunal before which the proceedings are pending.                    pp. 273-274

A decree of divorce *a vinculo matrimonii* by default was obtained against a wife through surprise; a petition, filed after the decree was enrolled and after the term, alleged that the decree was obtained by the suppression and concealment of facts concerning a former case and a decree between the parties, as to which the Court had no knowledge, and prayed that the case might be reopened and the decree set aside. *Held* that, under the circumstances, it was proper that the relief be granted.
                    p. 274

*Decided January 14th, 1914.*

Appeal from the Circuit Court No. 2 of Baltimore City. (GORTER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*James Fluegel* (with *O'Mara & Angelmier,* on the brief), for the appellant.

Under all the authorities, the appellee was estopped from attacking the decree at the time her petition was filed, as

such procedure, if sustained, would lead to endless confusion and defeat the stability of any decree. *Miller's Equity,* page 362, section 292, and cases cited; 38 *L. R. A.* (New Series). pp. 220.

The appellee fails to prove the very serious allegations contained in her petition; and she was guilty of gross laches in pursuing her remedy of appeal, or of moving to strike out the decree before enrollment, after she had notice thereof on July 19, 1911, and consequently, since there was no fraud, legal surprise or mistake, the decree of divorce in favor of the appellant must stand. See divorce case of *Gechter* v. *Gechter,* 51 Md. 187; *Rush* v. *Lynch,* 54 Md. 636 on page 640; *Herbert* v. *Rowles,* 30 Md. 271, on page 277; *Oliver* v. *Palmer,* 11 G. & J. 137; *Burch* v. *Scott,* 1 G. & J. 393; *Barry* v. *Barry,* 1 Md. Ch. 20.

The universal rule is that there must be an end of litigation somewhere, and that every man must have his day in Court. When that opportunity has been given him, he must make his defense, and if he is not satisfied with the result of the litigation he must appeal within a certain limited time—see *Maryland Steel Co.* v. *Marney,* 91 Md. 360, on pages 375 and 376—and failing therein, the decree is final forever.

To this rule there is the exception that if the defendant has been disabled from making any defense, without any fault on his own part contributing thereto, by any act of the plaintiff, causing the decree to be entered by mistake, or as the result of his fraud, and taking the defendant by surprise so that the opportunity to pass on the real issue was lost through the design of the plaintiff, such a decree based on such fraud and mistake, is one that the Court may vacate upon such facts being shown to it thereafter. In this case the plaintiff did nothing directly or indirectly to disarm the appellee and to prevent her from making any defense she might choose to make in the cause. Being the mother of three children, the plaintiff did not want to put the stigma of disgrace upon her and her children by offering proof of her

adultery in the record, as long as there was no defense made
to the allegation of abandonment by her. This is explained
by Mr. Angelmeir in his testimony on pages 56 and 57 of the
record. In *Rust* v. *Lynch,* 54 Md. 636, this Court decided
that where the process has been regularly served upon the
defendant, and he fails to appear and make his defense, and
judgment is rendered regularly against him, the Court will
not interfere with such judgment, unless the facts produced
establish "fraud, deceit, surprise or irregularity" in granting
the same, and that the defendant has acted *bona fide* and with
reasonable diligence in making the application.

The only ground on which the appellee seeks to set aside
the decree, while being herself guilty of willful negligence
of an inexcusable character, or perhaps staying away from
Court purposely and with design, while the case was being
prosecuted against her, is that she had some time before that
obtained a partial divorce from the appellant in another
Court (Circuit Court), and that the appellant had failed to
state that fact to the Court before obtaining his decree.

It is submitted that such prior decree was a matter of
defense only, and had nothing to do with the plaintiff's case.
There was no duty cast upon Mr. Foxwell to refer to the
same in any way in his case. *Anderson* v. *Cecil,* 86 Md. 490,
on page 493; *Wharton on Evidence,* Vol. 1, 3rd Ed. (1888),
sec. 326, and cases cited.

*Lewis Hochheimer* (with whom was *Joseph W. Clisham,*
on the brief), for the appellee.

1. An enrolled decree may be vacated "whenever equity
and justice demand it." *Miller, Eq.,* sec. 290; *First Nat'l.
Bank* v. *Eccleston,* 48 Md. 145, 156.

2. More particularly do courts act "freely and liberally"
when there has been a decree *pro confesso.* 16 *Cyc.* 513;
1 *Beach, Mod. Eq. Pr.,* sec. 202.

3. Lapse of time or laches (not at all conceded in this
case) is immaterial. 2 *Nelson, Div. & Sep.,* sec. 1056; *Cun-*

*yngham v. Cunyngham, Ambler,* 89 (Hardwicke, Ch.) ; *First Natl. Bank v. Eccleston, supra.*

4. In divorce suits, when there has been any suppression or concealment (with or without corrupt or ill design) of the existence of a prior decree (domestic or foreign) between the parties, the case is always reopened. Mere failure to apprise the Court of such an impediment to the exercise of its jurisdiction constitutes a "fraud upon the Court," vitiating the whole proceedings. *Conway v. Beazley,* 3 Hagg. Ec. 639, 643, S. C., 5 Eng. Ec. 242 ; *Borden v. Fitsch,* 15 Johns. 121, 145.

5. The decree is vacated even when rights of others have intervened. 2 *Nelson, Div. & Sep.,* sec. 1053.

6. Courts may *sua sponte,* at any stage of proceedings, without ceremony, dismiss the clandestine suit. 11 *Cyc.* 701 ; *Fisher v. Fisher,* 93 Md. 314.

7. As to the infant party, by the terms of the decree of the Circuit Court a ward thereof, the decree here was wholly unauthorized. 2 *Story, Eq. Jur.,* sec. 1353 ; *Hill v. Hill,* 49 Md. 450.

PATTISON, J., delivered the opinion of the Court.

The petition in this case was filed by the appellee, Hattie M. Foxwell, asking that the enrollment of the decree by which she was divorced *a vinculo matrimonii* from her husband, the appellant, and the care and custody of her three minor children awarded to him, be annulled and set aside.

As alleged in her petition, she, on the 17th day of April, 1907, filed a bill in the Circuit Court of Baltimore City against her husband, H. Webster Foxwell, charging him with abandonment and cruelty of treatment and praying for a divorce *a mensa et thoro* and other relief; that he, on the 12th day of May, 1908, after having been summoned in the proceedings instituted by her, filed his cross-bill praying for a divorce *a vinculo matrimonii* from the plaintiff on the ground of alleged adultery. The right of each to the relief

prayed for in their respective bills was heard by JUDGE
HEUISLER, sitting in the Circuit Court, and on the 8th day
of October, 1909, a decree was passed divorcing the plaintiff,
Hattie M. Foxwell, *a mensa et thoro* from the defendant, H.
Webster Foxwell, and awarding Esther Foxwell, the young-
est of their infant children, to her care and custody, and
ordering the defendant to pay unto the plaintiff the sum of
twenty-five dollars per month for her maintenance and sup-
port.  From this decree no appeal was taken and while it was
still in force, as the petition alleges, the said H. Webster
Foxwell and his solicitors, who were his solicitors in the
divorce proceedings in which the above decree was passed,
and to whom the matters above stated were well known and
understood, fraudulently and corruptly contriving, designing
and devising to defeat the operation of said decree and to
obstruct the administration of justice, on the 6th day of
April, 1911, filed their bill of complaint in the present suit—
in the Circuit Court No. 2—alleging that on the 15th day
of January, 1906, the petitioner had abandoned and deserted
him, the said H. Webster Foxwell, and further alleging, in
vague terms, that she had committed the crime of adultery
with divers men, to the plaintiff unknown, at various times
and places, and praying for a divorce *a vinculo matrimonii*
and for the custody of the infant Esther Foxwell, who, at
such time, was in the care and custody of her mother, the
petitioner, and a ward in Chancery of said Circuit Court of
Baltimore City under the provisions of the decree above men-
tioned.  That said allegation of adultery was a "pure fiction,
a wilful and corrupt falsehood, and that throughout the testi-
mony taken in support of his bill, absolutely no attempt was
made to introduce any evidence, even in the remotest degree,
tending to establish it."  That "the cause was never heard
upon its merits, there having been a decree *pro confesso*
under which the *ex parte* testimony was taken" and upon
which the final decree was passed.  That the evidence of
abandonment and desertion offered by him covered the period

of time when she lived apart from him under the sanction of the decree in the former case. That the fact of the passage of said decree by the Circuit Court of Baltimore City on the 8th day of October, 1909, "was wilfully, fraudulently and corruptly concealed and suppressed throughout the whole proceedings" before JUDGE STUMP, sitting in Circuit Court No. 2, who subsequently on the 27th day of June, 1911, without knowledge of said proceedings and the decree granted therein, passed a decree divorcing the said H. Webster Foxwell *a vinculo matrimonii* from his wife, the petitioner, and granting to him the care and custody of all their infant children, including Esther Foxwell.

The petition further alleges that the passage of such decree was procured by H. Webster Foxwell in consequence of the fraud and imposition practised upon the plaintiff and the Court. That when summoned to appear before the Court to answer the bill in such divorce proceedings she, Hattie M. Foxwell, hastened from her home in a distant part of the State to the office of the Clerk of the Circuit Court No. 2 of Baltimore City, where, as she alleges, she was informed by one supposedly in authority, that she need not come into Court until further notified, and that as she was without funds enabling her to remain in the city, or with which to employ counsel, she returned to the home of her father in St. Mary's County, without having employed counsel, expecting to be further notified when her presence in the city was needed. That not until she received a letter from H. Webster Foxwell's solicitor, dated July 19, 1911, enclosing a copy of the decree and threatening her with contempt proceedings if she did not give up her child confided to her by the Circuit Court of Baltimore City in the decree in the former case, did she know of the passage of said decree, and that "she was taken utterly by surprise" when she so heard of it. That "immediately upon receipt of this letter she hastened to Baltimore and in her distress and poverty applied to Alexander H. Robertson, Esq., who, as she learned, was the Master in

Chancery who had passed on the cases; it was through his
good offices and advice that the counsel who now appears for
her was interested in her behalf."

The counsel so employed, as disclosed by the record, on the
31st day of October, 1911, filed a petition, for and on her
behalf, asking that the decree be stricken out. The defend-
ant filed a demurrer to this petition, which demurrer was
sustained by an order of JUDGE HARLAN, passed on the 15th
day of March, 1912, in which order he refused to strike out
the decree of June 27th, 1911, and dismissed the petition
with costs, from which order an appeal was taken to this
Court, *Foxwell* v. *Foxwell*, 118 Md. 471, and we decided
that the averments in the appellant's bill were too general
and indefinite to warrant the Court in disturbing and vacat-
ing the enrollment of the decree, and the order of the Court
below was affirmed, without prejudice to the appellant, the
appellee to pay the costs. In affirming the order of the lower
Court, we stated that the petitioner might be entitled to the
relief prayed upon the institution of proper proceedings, and
therefore held that she should not be precluded from present-
ing her case in a proper way, by filing an amended petition
or original bill.

It was upon the return of the case to the Court below that
the petition of the plaintiff was filed and to which a de-
murrer was interposed and overruled; whereupon the defend-
ant to the petition answered admitting the fact of the former
proceedings in the Circuit Court and the passage of the
decree therein, as alleged in the petition, but denied that he
or his solicitors fraudulently or corruptly contrived, designed
or devised to defeat the operation of the first mentioned de-
cree, or to obstruct the administration of justice; and especi-
ally denied the alleged fraudulent suppression and conceal-
ment by himself and his solicitors of the former proceedings
and the decree passed therein, averring that it was not his
duty to bring such facts to the attention of the Court, because
(1st) the charge of adultery contained in the bill gave to

the Court jurisdiction over the subject matter of the suit, and (2nd) it was the duty of the defendant, Hattie M. Foxwell, to plead the passage of said first decree in bar of the subsequent decree.

The answer also denied that the petitioner was without full information as to the pendency of said proceedings against her, and averred that after being summoned as alleged in her petition, she conferred with one of the clerks in the office of the Clerk of the Circuit Court No. 2, as well as with an attorney, who was at the time present and to whom she was directed by such clerk, both of whom, the answer alleges, undertook to direct her as to the course she should pursue in relation to such suit instituted against her; and in his answer he denied that she acted with diligence and in good faith in seeking to have the decree set aside, and charged her with laches and bad faith in relation thereto. There are other denials and allegations contained in the answer, but we think them unimportant in the view we take of the case.

After hearing the evidence offered by the petitioner and respondent upon the issues joined by the petition and answer, the Court, Judge Gorter, then sitting in Circuit Court No. 2, on the 2nd day of May, 1913, passed an order or decree by which it was "ordered and adjudged that the enrollment of said decree (the decree of June 27th, 1911) is hereby discharged and the decree vacated and set aside, the case to remain open as a pending case upon the plaintiff's bill, with leave to the defendant to answer the bill, and leave to both parties to proceed further in ordinary course." The appeal is from this order.

The petitioner admits in her petition that she was summoned to appear and defend the suit instituted against her in Circuit Court No. 2, and that she, in obedience to such summons, appeared in the office of the clerk of said Court, and in her testimony, stated that she was told by one of the clerks in said office that she had made a mistake as to the time when she should appear, that she was not to be there

for fifteen or thirty days from that time; so she, being without money with which to pay her board in the city, returned to her home in St. Mary's County, "thinking that she would have notice when the case would be tried." In her testimony she also admitted talking with some attorney in the office of the clerk of said Court, to whom she had been directed by the above mentioned clerk in the office, and that she promised him to go to his office, but being thereafter told that he took only murder cases she did not go to see him. Who this attorney was is not disclosed by the record.

"Where the process has been regularly served upon the defendant and he fails to appear and make his defense and judgment is regularly entered against him, a strong case must be presented to justify the Court in striking out the judgment after the lapse of the term (or the enrollment of the decree); and the Court will not in any such case interfere with the judgment unless the facts produced clearly establish fraud, deceit, surprise or irregularity *in obtaining the same,* and the defendant has acted *bona fide* and with reasonable diligence in making the application." *Rust* v. *Lynch and Jackson,* 54 Md. 640; *Anderson* v. *Graff,* 41 Md. 601; *Sarlouis* v. *Firemen's Ins. Co.,* 45 Md. 241; *Abell* v. *Simon,* 49 Md. 318; *Kemp & Buckey* v. *Cook and Ridgely,* 18 Md. 130; *Smith* v. *Black,* 51 Md. 247.

By the application of this rule, the relief sought by the petitioner would have to be denied her upon her own admissions, if there were nothing more before the Court to be considered by it in determining the question presented.

It is conclusively shown by the record that the decree of June 27th, 1911, was passed by JUDGE STUMP, sitting in *Circuit Court No. 2,* in absolute ignorance of the former divorce proceedings in the *Circuit Court* and of the decree of October 18th, 1909, passed therein by JUDGE HEUISLER, divorcing the plaintiff, Hattie M. Foxwell, *a mensa et thoro* from her husband, H. Webster Foxwell, and awarding the care and custody of the infant child Esther Foxwell to her.

All of the facts, however, were fully known to the plaintiff, who withheld them from the Court in the prosecution of the second divorce proceedings.

"The general rule undoubtedly is that after the enrollment of a decree in chancery, in the absence of fraud, surprise or irregularity in its procurance, a substantial error in it will not be corrected or a rehearing of the case granted upon a mere petition, a bill of review or an original bill for fraud being the appropriate form of proceeding in such cases." *Primrose* v. *Wright,* 102 Md. 105; *Pfeltz* v. *Pfeltz,* 1 Md. Ch. 455; *Burch* v. *Scott,* 1 G. & J. 393; *Tomlinson* v. *McKaig,* 5 Gill, 279; *Thurston* v. *Devecmon,* 30 Md. 217; *Krone* v. *Linville,* 31 Md. 146; *Pfeaff* v. *Jones,* 50 Md. 269; *Rice* v. *Donald,* 97 Md. 396.

But to this general rule there are certain well-defined exceptions which are equally well established, where the procedure may be by petition. These are in cases not heard on their merits and in which it is alleged that the decree was entered *by mistake or surprise or under such circumstances as shall satisfy the Court in the exercise of a sound discretion, that the enrollment ought to be discharged and the decree set aside.* *Primrose* v. *Wright, supra; Herbert* v. *Rowles,* 30 Md. 278; *Bank* v. *Eccleston,* 48 Md. 155; *Pfeaff* v. *Jones,* 50 Md. 296; *Gechter* v. *Gechter,* 51 Md. 187; *Patterson* v. *Preston,* 51 Md. 190; *Downes* v. *Friel,* 57 Md. 533.

In our judgment, this case clearly falls within these exceptions, and the result is that the order appealed from should be affirmed.

The reason for permitting the setting aside or the annullment of decrees which are entered by mistake or surprise, or under such circumstances as to satisfy the Court, in the exercise of a sound discretion, that the enrollment ought to be set aside, exists even more strongly in divorce proceedings than in other cases to which the rule is applied. In divorce proceedings, which are often not contested and where collusion may exist between the parties, the public has a peculiar inter-

est which, as was said in the case of *Fisher* v. *Fisher,* 95 Md.
319, "is in the care of the tribunal before which the proceed-
ings are pending, and it will be astute in enforcing the
policies and principles of the law, less by the suppression or
perversion of important facts it may be made the medium of
obtaining a decree to which neither of the parties is justly
or legally entitled."

In that case the parties had in a former case (*Fisher* v.
*Fisher,* 93 Md. 298) been denied a divorce, as both, in the
judgment of the Court, had violated their marital vows, and
the Court in the 95th Md. case said: "No reference having
been made to these proceedings in the pending case, and no
reason having been assigned for the omission to do so, it was
entirely proper for the judge to elicit, on his own motion,
proof as to the identity of the parties, and it having been
admitted that they were the same persons as in the former
case, the bill was properly dismissed."

And so in this case, upon the same reasoning, it was, in
our opinion, entirely right and proper for the Court to set
aside the decree and re-open the case, upon learning of the
former case and the decree passed therein, which facts were
concealed and suppressed from him and of which he had no
knowledge. These facts and circumstances were sufficient to
satisfy the Court, in the exercise of a sound discretion, that
the enrollment ought to have been discharged and the decree
set aside. The decree of the lower Court will be affirmed.

*Decree affirmed, with costs to the appellee.*