## LENA BROOKS *v.* BENJAMIN BROOKS

[Nos. 13-14, January Term, 1945.]

*Decided March 1, 1945.*

The causes were argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Eugene P. Childs* for the appellant.

*George B. Woelfel* for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

Appeals in two cases, involving the same parties and growing out of the same circumstances, were heard together. Appellant in both is the former wife of appellee. She filed a bill of complaint against him in the Circuit Court for Anne Arundel County on September 22, 1943, claiming technical desertion while living together by his refusal to cohabit for a period of many years prior to the filing of the bill, and asking for alimony and further relief. An answer was filed by appellee denying the above allegation of the bill. A cross bill was also filed by appellee claiming that the refusal to cohabit was by the appellant and not by the appellee, and asking for a divorce *a vinculo* on the ground of abandonment. The first cross bill also claimed a voluntary separation, but this was amended, and the last mentioned allegation omitted. Then the appellant used the discovery Rules 2 and 3 of Part II of the General Rules of Practice and Procedure to propound 29 interrogatories to appellee, which were duly and fully answered. These interrogatories were entirely about appellee's finances. The record shows that on March 2, 1944, there was a hearing on the merits of the case and testimony taken, but all of this testimony is not in the record. It appears, however, from the opinion of the Chancellor, which was not included in the record (contrary to the decisions of this court, *Title Guarantee & Trust Co. v. McCulloh*, 108 Md. 46, 69 A. 434; *Weaver v. King,* 184 Md. 283, 40 A. 2d 511), but was later filed with the clerk at our request, that the appellant called the appellee to the stand and proceeded to examine him as to his property rights, and that this examination continued for two hours or more until the court recessed for lunch. "After lunch" (quoting from the opinion) "the Court was advised that the parties had worked out a plan for the settlement of their property rights, and the plaintiff" (appellant) "by her counsel in her presence moved for leave to amend her bill of complaint by adding thereto a prayer for a divorce *a vinculo matrimonii.*" This amendment was made, the

appellant produced testimony, the appellee declined to submit any, and the Chancellor on the same day passed a decree divorcing the appellant from the appellee. The written agreement, settling the property rights of the parties, was then filed in the case, but it was not incorporated in the decree.

The appellant, during the proceedings above narrated, was represented by two capable and competent counsel, one from the Anne Arundel County Bar and one from the Bar of Baltimore City. On April 6, 1944, appellant through her present counsel, who was not one of those originally representing her, filed a petition to have the divorce decree stricken out, to have the amendment to her bill, wherein she prayed for a divorce, stricken out, and to have her case heard on the merits of the bill as originally filed. The grounds of this petition are thus set out therein:

"6th. That at the time of the hearing which was not upon the merits of the case, your petitioner was in an extremely confused, bewildered and disturbed state of mind and did not fully comprehend the situation and did not realize until several days after the decree had been signed that she had procured a divorce *a vinculo matrimonii* from the defendant.

"7th. That she did not know that the Bill of Complaint had been amended to include a prayer for absolute divorce until several days after the decree of divorce was filed and only after she had consulted other counsel who informed her of the meaning of said decree.

"8th. That the decree of divorce *a vinculo matrimonii* entered in this case on March 2, 1944, was a great surprise to your petitioner, as your petitioner had never sought such a decree."

A demurrer to this petition was sustained, with leave to amend, appellant failed to amend, and the petition was dismissed. From the order of dismissal, appeal is taken here.

On April 8, 1944, appellant filed her bill of complaint in the Circuit Court for Anne Arundel County asking

that the agreement of settlement of March 2, 1944, above referred to, be set aside. The bill states that appellant was "told by one of her counsel that unless she signed the agreement of settlement * * * she would be turned out in the world without any support as her husband had no property or assets of consequence." The appellant further alleged in the bill:

"4th. That naturally she was confused by the proceedings, and did not understand the legal terms used, and on the date of the hearing she was in an extremely confused, bewildered and disturbed state of mind and trusted largely in the advice of her chief counsel who it now appears, either by design or as a reckless disregard for her rights, left her, after her long years of servitude, poverty and suffering with but a doubtful contract, thereby preventing the Court from awarding unto her such support as the merits of the case should justify.

"5th. That the agreement of settlement does not properly set forth the terms as explained to her by her counsel, in that she understood that she was to have a home as long as she lived and the defendant, Benjamin Brooks, was to return to her articles and personal belongings that he wrongfully took from her and removed to his place of business on West Street, Annapolis, Maryland, Ex. 1.

"6th. That said agreement of settlement not only does not set forth the terms that she understood would be incorporated therein, but the signing thereof was induced by the statement of her counsel that the defendant, Benjamin Brooks, was possessed of very small means."

Then is appended a statement of properties it is claimed the appellee owns and the further allegation is made: "8th. That your petitioner would never have signed the agreement of settlement had she been able at the time to fully comprehend its meaning, and had she not been induced to sign the same by her counsel."

The agreement of settlement filed as an exhibit gives appellant $15 a week during her life, and she, in turn, releases the appellee and his brother from all her claims against their properties, held in their joint names.

A demurrer to this bill was sustained with leave to amend, no amendment was made, and the bill was dismissed. The appeal from the order dismissing the bill, was heard here with the appeal from the order in the divorce case.

In the divorce case the appellant contends that it was granted in violation of equity rule No. 26 of the Circuit Court for Anne Arundel County, which provides that "No decree in a suit for divorce shall be passed in less than thirty days from the filing of the bill nor on the cross-bill within thirty days from the filing of the cross-bill." This rule was not certified to us by the Court and brought up in the record in the proper manner, but was furnished us by agreement of counsel after the hearing. We shall consider it as if brought up on writ of diminution. The bill originally filed by the appellant was one containing allegations sufficient to authorize the granting of a divorce *a vinculo*. In such a case, the Court could have granted a divorce under the prayer for general relief. *Wald v. Wald,* 161 Md. 493, 159 A. 97. In that case this Court first found that the wife was entitled to a divorce on her cross-bill although she did not ask for it, and the decree of the lower court was reversed for the purpose of giving her one. The wife then filed a motion to modify, on the ground that she did not want a divorce. The Court, while holding that she could get a divorce on a prayer for general relief without specifically asking it, said that she did not have to take it, and therefore modified the decree as requested. It appears, therefore, that the amendment made in the case now before us on the day the decree was filed was not necessary to enable appellant to get an absolute divorce, as she had a right to one under her original bill. As this original bill was filed more than 30 days prior to the decree, equity rule No. 26 of the Circuit Court for Anne Arundel County has no application.

The main contention made by the appellant in both the divorce case and in the case to set aside the agreement of settlement is that she was confused and did not

fully comprehend the situation, and that she was induced to ask for the divorce and sign the agreement by her counsel. There is no allegation of any fraud perpetrated on her by the appellee, or any misrepresentation made by him. Her whole argument amounts to this, that she relied on her counsel in doing what she did, and that she afterwards became dissatisfied with the result.

It should be noted that she was not only present in Court when her counsel made the amendment to the bill, indicating definitely her desire to have a divorce, but that she testified. In her testimony, after stating the facts about the desertion, she was asked, "You are asking the Court now to grant you an absolute divorce. Is that right? It is." "And through your counsel you ask the Court to amend your bill from an alimony bill to the bill of absolute divorce and alimony? Yes." The agreement of settlement was signed and sealed by her. All of this took place after her husband, according to the opinion of the Chancellor, had been on the witness stand for two hours or more and had been examined during that time as to his income and the property he owned. His examination must have been based upon the interrogatories which he had answered. His answers to these interrogatories showed that his salary was $55 a week, that Brooks Brothers, which formerly consisted of his brother and himself, but with which firm he had severed his connection as a partner in 1931, owed him $5,000; that he owned his home-place on German Street, in Annapolis, for which he paid $4,300 and which was subject to a mortgage of $3,500; that his income, from his income tax reports, averaged about $3,200 a year for the past three years. There were several other pieces of property in which his name was inserted in the deeds with that of his brother Jacob, in order, as he said, that the respective wives would not have to sign the deeds. The appellee testified that he had no interest in these properties, except to help his brother. The lengthy examination of the appellee, above referred to, must have convinced appellant's counsel of the truth of the above facts

and that a settlement for about one-fourth of appellee's present income during appellant's life was advisable. This was the settlement that was made.

The action of an attorney in the course of litigation in which he is employed is binding upon his client. *Poe's Practice,* Tiffany's Ed., p. 22, par. 7, and numerous cases there cited. There is a *prima facie* presumption that he is acting under the authority given him. This, of course, may be rebutted, but that is not the point raised here. There is no question that appellant's counsel were repre-senting her with her authority and approval. She was present at the time, knew what they did, consented to it and carried out her part of the arrangements by testifying that she wanted her bill amended, that she wanted an absolute divorce and by signing the agreement. There is not even any claim that there was any fraud practiced on her by her counsel, although she now says that what her chief counsel urged her to do was done either by design or with a reckless disregard for her rights. We are unable to see from the record where her rights were disregarded, as it appears that the settlement made was at least reasonable, although it is possible she might have gotten more by an order of Court than by the agreement. On the other hand, it is quite possible she might not have been able to prove her case. It is one thing to prove a case where there is no defense, and another to prove one where there is a vigorous contest. All of these considerations may have been in the mind of the appellant's counsel and may have caused them to advise her as they did.

There have been a number of cases in this Court in which petitions have been filed to strike out divorce decrees. In each case the petitioner has been required to make a definite and specific showing of some proper grounds of attack. Such cases are *Foxwell v. Foxwell,* 122 Md. 263, 89 A. 494; *Pressler v. Pressler,* 134 Md. 243, 106 A. 686; *Raymond v. Raymond,* 159 Md. 566, 152 A. 110; and *Noellert v. Noellert,* 169 Md. 559, 182 A. 427. The recent case of *Saltzgaver v. Saltzgaver,* 182 Md. 624, 35 A. 2d 810, does not help the appellant's conten-

tion. In that case the Chancellor had dismissed appellant's bill for divorce, which she had filed on the ground of adultery. The facts were admitted, but the Chancellor held that she was barred by the doctrine of recrimination. She did not appeal, but after the decree had become enrolled, she filed a petition asking that it be stricken out. She alleged that she was, at the time the decree was passed, and afterwards, in a confused, extremely nervous and highly disturbed state of mind, and had no means to bring the case to this Court. She further showed that the circumstances of the case were such as should satisfy the Court in the exercise of a sound discretion that a situation existed in which equity and good conscience, justice and enlightened public policy required that the decree be set aside. This Court held that the decree should be set aside under well established equitable principles, the Court finding that the Chancellor was mistaken in his interpretation of the law and the facts, and that the appellant, under the admitted facts, was entitled to a divorce. In the cases before us, there is no misinterpretation of the facts, and no misapplication of the law. The allegations made by the appellant amount only to the fact that she would not have made the agreement she did if she had understood, and that she now wants another chance. That is certainly not sufficient ground to upset a final decree, and to set aside a sealed instrument, especially when it is not alleged that the other party to the decree and to the agreement had anything to do with persuading the appellant to make the settlement she did. The Chancellor, in his very excellent opinion, sustaining the demurrer to the appellant's bill of complaint to set aside the agreement, said, "The relief prayed for is against the defendant; not her counsel. Yet there is not one word in this bill even intimating, by inference or otherwise, that either the defendant or his counsel did anything or said anything which caused her to sign the agreement. How can the defendant answer such a bill? Wherein lies the defendant's responsibility for what her counsel told her? When did the law become such that

428

courts will strike down an agreement deliberately entered into unless some fraud, duress, or other overreaching on the defendant's part is shown? When did the law become such that the courts will strike down an agreement because the Plaintiff's own counsel induced her to sign it unless there is a showing that said Counsel were activated by corrupt motives? Where does this Court get the right to strike down an agreement deliberately entered into by a woman, in the full possession of all of her faculties and on the advice of two experienced lawyers of her own choosing, simply because she comes in, and says that at the time of the signing, she did not fully comprehend its meaning?"

We agree with the Chancellor that the questions asked by him answer themselves, and that the appellant has shown no ground either to set aside the decree or to annul the agreement. For these reasons the orders will be affirmed.

*Order in No. 13 affirmed with costs to appellee.*

*Decretal order in No. 14 affirmed with costs to the appellee.*