E. RUSSELL RITZ *v.* CELESTE W. RITZ

[No. 111, October Term, 1946.]

*Decided April 18, 1947.*

338

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*D. Franklin McGinnis* for the appellant.

*George M. Brady*, with whom was *John Marshall Jones, Jr.*, on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by E. Russell Ritz, appellant, from a decree of the Circuit Court of Baltimore City by which his wife, Celeste W. Ritz, appellee here, was awarded a divorce *a mensa et thoro* from the appellant. The decree further ordered appellant to pay $150 monthly to the appellee, payments to be made through the Probation Department of Baltimore City; to pay reasonable medical expenses for the appellee; to pay the wife's solicitor the sum of $150 as counsel fee; and the costs of those proceedings.

The parties to this cause, both college graduates, were married in Washington, D. C., on the 12th of June, 1936, and have no children. The appellee formerly worked but has been unemployed for the past two years. The appellant is an engineer employed by a chemical company in Baltimore, where both parties have lived for more than one year prior to the filing of the bill of complaint in this case. The appellant receives a gross salary of $431.25 per month, from which are deducted Social Security tax, withholding tax, a contribution to a pension fund, and hospitalization charges, leaving him a net amount each month of approximately $347.26. The parties to this suit own, in their joint names, a home in Baltimore, worth between $9,500 and $11,000, subject to a ground rent of $90.00 and a mortgage of $1,700. They apparently had no trouble during the first six years of their married life.

The appellant charges the appellee with five physical assaults upon him, and that the appellee makes so much noise and quarrels with him so much he can hardly sleep at night. Since January 1, 1946, he says he has not been getting more than about three hours sleep a night. He also charges that the appellee calls him at his office on the telephone so often while he is at work that he is unable to properly perform his duties. He testified that his wife accused him of being out with women of ill repute. He admits that he left the home where he and his wife lived in the early part of June, 1946. A bill for support and maintenance was filed July 16, 1946, by the appellee to which the appellant answered and filed a cross-bill for a divorce *a mensa et thoro*. An answer was filed to the husband's cross-bill by the wife. After the hearing in the case, the Chancellor suggested that the wife amend her bill and ask for a divorce *a mensa et thoro*. This amendment was made, whereupon the Chancellor signed the degree hereinbefore set forth.

The appellee is highly nervous and the husband is of a nervous temperament. He charges, and she admits, that on an evening in July, 1944, they attended a very depressing motion picture show and while driving home she hit him on the head with a hammer and stabbed him several times in the arm with a screwdriver. Scars from these wounds are still visible. All of the other assaults she denies except that, in response to an accusation that she scratched him in the face with her fingernails, she said she did not think she did that. She also admits that she struck the kitchen door of the house eight or nine times with an axe one evening while her husband was upstairs. She said that she did this to show the poor construction of the house. She says that the reason she accused him of going out with women of ill repute, was because she found contraceptives in a magazine in his car and she and her husband had not used them for eight years. The appellee was taken to Sheppard Pratt in the fall of 1945 for treatment and apparently stayed there about one month. There is some question whether

her husband caused her to be taken there, or whether this was done through the efforts of her minister and her mother. During her stay at that institution her husband wrote her a number of letters, which she offered in evidence, in which he expressed regret that it was necessary for her to be confined there. These letters all show that the husband had sincere affection for his wife.

A neighbor testified that she lived next door to the parties to this suit in a group house and that she had heard commotion in the Ritz house between January and June, 1946. She could hear Mrs. Ritz quarreling but could never hear Mr. Ritz. Sometimes she would hear the appellee in the middle of the night, and sometimes about two or three o'clock in the morning, screaming and "hollering." She said this interrupted her sleep and it was necessary for her to call the police twice.

A fellow employee of the appellant testified that very often Mr. Ritz would come to work in the mornings very tired and would go to sleep at his desk.

One day early in June, 1946, the appellant stayed away from work, telling his wife he was ill. They had breakfast together. Later in the morning two doctors came to the front door. They were sent by appellant's solicitor. The appellee became frightened, thinking she was to be taken again to Sheppard-Pratt and told the doctors that they could not come in. She then told her husband that she was going to her sister's home in Ellicott City. The husband and wife then drove in the car to the sister's house. After they arrived, the parties to this suit and the sister had a conversation in which the appellee stated that she would like to go away for a rest for awhile. The appellant was unwilling for her to do this. The wife testifies that the husband said he did not want her. She said she then brought up the subject of support and the husband agreed to give her $150 a month for three years and allow her to live in the house for that period. After this discussion, the appellant took the appellee to see an attorney and he waited outside the attorney's office for her. They then went to a restaurant

for dinner. The appellant then took his wife to her mother's home and left her there. Later that evening the wife returned to the home where she and her husband lived. The appellant packed up and left the next morning. The appellant admits that he left the home but claims that it was necessary for him to do so on account of the cruelty of his wife.

The wife admits that the appellant has always treated her well but highly resents the fact that he had her committed to Sheppard-Pratt in 1945 and the attempted commitment in 1946. The appellant has contributed to the appellee's support since he left her.

As stated by Chief Judge Bond in the case of *Kruse v. Kruse,* 179 Md. 657, 663, 22 A. 2d 475, conduct of one spouse which compels the other to leave may justify a divorce to that other on the ground of desertion, even though the conduct may not justify a divorce on the ground of cruelty. *Robertson v. Robertson,* 187 Md. 560, 51 A. 2d 73. If the wife's actions, which caused the husband to leave, were beyond her own control because of mental derangement, her forcing him to leave does not afford grounds for a divorce to him, because a competent will on the part of the wife is necessary to render her capable of desertion. As was said in the Kruse case, *supra*, at page 663 of 179 Md., at page 478 of 22 A. 2d: "Mere high strung nerves, and unrestrained impulsiveness of a sane woman would not, on the other hand, save the actions of the wife from legal desertion." *Lynch v. Lynch,* 33 Md. 328. In the instant case the wife has not been adjudged insane although, as hereinbefore stated, in November, 1945, approximately eighteen months before this suit was filed, she received treatment at Sheppard-Pratt under advice of doctors. Her actions immediately prior to the time her husband left her indicates her highly nervous condition. The question before us is whether the conduct of the wife was such as to endanger the life, person, or health of the husband, and such as to render impossible the proper discharge of the duties

of married life. *Bounds v. Bounds,* 135 Md. 220, 108 A. 870; *Hastings v. Hastings,* 147 Md. 177, 181, 127 A. 743.

As was said in the case of *Stevens v. Stevens,* 183 Md. 599, at page 602, 39 A. 2d 690, 691: " 'Nagging, abuse, cursing and swearing do not amount to "cruelty of treatment" or "excessively vicious conduct," which will justify one spouse in deserting the other.' Rudeness, use of profane and abusive language and sallies of passion, if not in a manner and degree endangering the other spouse's security or health are not sufficient." *Mason v. Mason,* 181 Md. 666, 30 A. 2d 748. The law is clear that where a wife's misbehavior has been such as to render continuance of the marriage relation unbearable or such as is recognized by the law as sufficient to justify her husband in leaving her, she is the spouse who is guilty of desertion. If the cruelty of the wife is so extreme that it drives her husband away from her, the law presumes that she intended such effect of her cruelty.

In the instant case the assault which the wife admits she committed on her husband in July, 1944, might well be considered a single act of violence, as according to our interpretation of the testimony it all happened at the same time. The other acts of violence are denied by the wife and there is no corroboration of the husband's testimony, other than the scratched marks on his face which he says were inflicted by his wife's fingernails. A single act of violence will ordinarily not justify a divorce on the grounds of cruelty. *Hastings v. Hastings, supra; Appel v. Appel,* 162 Md. 5, 8, 158 A 65. It is, of course, true that the acts of the wife in screaming at night and disturbing her husband and the neighborhood were very reprehensible, but still might have been corrected had the husband allowed her to go away for a rest as she suggested before he left her. He wanted her to go to Sheppard-Pratt. She wanted to go somewhere else for a rest. We think that her actions were not sufficient to justify her husband in leaving her the next morning. The husband admits that he lived with his wife as man and wife after the assault in July, 1944,

and says that they probably lived together as man and wife after the scratching incident in the spring of 1946, which he charges. The charges which he makes against her after that time are hardly sufficient to revive the condoned offenses. *Fisher v. Fisher,* 93 Md. 298, 48 A. 833; *Collins v. Collins,* 184 Md. 655, 662, 42 A. 2d 680.

We think that the actions of the wife in the instant case fall far short of those of the wife in the case of *Kruse v. Kruse, supra.* In that case the wife would frequently leave her husband without notice. In that case the wife admitted that merely out of anger she attacked her husband on a number of occasions. On the day when he left her, she struck him and locked herself in her bedroom. This act had not been condoned by her husband. She invaded her husband's place of employment and complained to his superiors about his immoral relations with women at work there. We do not feel that the facts in the instant case go that far. In our opinion the life and health of the appellant were not sufficiently endangered as to justify him in leaving his wife the morning after he attempted to place her in a sanitarium. From the testimony, they engaged in marital relations practically up until that time. Marriage imposes upon the parties the duty to bear and forbear (*Hillwood v. Hillwood,* 159 Md. 167, 169, 150 A. 286) and we think that the husband should have borne his wife's nervous afflictions for a longer period of time and given her the opportunity, as she suggested, to go away for a rest and see if thereby her condition would not have improved sufficiently for the parties to have continued their married life. The Chancellor saw the witnesses and had the opportunity to judge of their demeanor and credibility. That part of the decree which awarded a divorce *a mensa et thoro* to the appellee should be affirmed.

The appellant contends that because the Trial Judge suggested to the appellee that her pleadings be amended for the purpose of asking for a divorce *a mensa,* that such a suggestion on the part of the Chancellor was improper at that late stage of the case and that he was

taken by surprise. Article 16, Section 18, Flack's Annotated Code, 1939, provides: "Upon application of either plaintiff or defendant to any court of equity, he shall have the right, upon payment of such costs as the court may direct, to amend at any time before final decree, the bill of complaint, answer, pleas, demurrers, or any of the proceedings in any cause before the court, so as to bring the merits of the case in controversy fairly to trial." Rule 17, General Equity Rules of this Court provides: "The Court shall at any time before final decree, in furtherance of justice and upon such terms as to payment of costs as may be just, permit any bill, answer, process, proceeding, pleading, or record to be amended, or material supplemental matter to be set forth in an amended or supplemental pleading. The Court at every stage of the proceeding shall disregard any error or defect in the proceedings or pleadings which does not affect the substantial rights of the parties. A further and better statement of the claim or defense or further and better particulars of any matter stated in any pleading may be permitted upon order of Court."

We think that it was entirely proper for the Court to suggest and to allow the amendment in the interest of justice. As the original prayer was for alimony alone and as alimony will not be awarded except on grounds which would be sufficient to grant a divorce *a mensa et thoro* (*Wendel v. Wendel,* 154 Md. 11, 20, 139 A. 573), the appellant should not have been surprised, nor were his rights prejudiced. The bill of complaint filed by the appellee did not contain a prayer for general relief as in the cases of *Wald v. Wald,* 161 Md. 493, 502, 159 A. 97, and *Brooks v. Brooks,* 184 Md. 419, 424, 41 A. 2d 367.

The appellant contends further that because the decree in this case was signed less than thirty days from the time the bill was amended, allowing the prayer for the divorce *a mensa et thoro* to be added, that Rule 10 of the Supreme Bench of Baltimore City was violated. That Rule, which was in effect at the time the decree was signed, provided in part: "No decree in a suit for divorce shall be passed in less than thirty days from

the filing of the bill, or on the cross-bill within thirty days from the filing of a cross-bill. * * *" The bill of complaint was filed by the wife on July 16, 1946. The amendment was made on October 25, 1946, and the decree was signed November 1, 1946. As we hold that no substantial right of the parties was prejudiced by the amendment on October 25, 1946, we do not think that that amendment could be considered as a new bill and, as the decree was signed later than thirty days from July 16, 1946, that argument must fail.

We believe that the amount of alimony awarded by the Chancellor to the wife to be paid through the Probation Department of Baltimore City should be reduced from $150 to $100 per month and that no provision should be made in the decree at this time for payment of medical expenses by the husband. The decree should therefore be changed in those respects. The counsel fee of $150 allowed the solicitor for the appellee appears to be proper.

*Decree affirmed in part and reversed in part, and case remanded for passage of a decree to conform with this opinion, with costs to appellee.*

GRASON and MARKELL, JJ., dissent.