STECHER *v.* STECHER

[No. 336, September Term, 1960.]

156

*Decided July 7, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, MARBURY and SYBERT, JJ.

*Julian S. Brewer, Jr.,* and *Norman F. Summers* for the appellant.

*John A. Blondell* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

A husband appeals from a decree awarding permanent alimony, without divorce, to his wife. Custody of two minor children was awarded temporarily to him, as prayed in his answer, subject to further order of court. The husband does not challenge the amount of the alimony award but contends that he had just cause for leaving the marital home and severing the marital relation because of the wife's misconduct.

The parties were married in 1948, and the first years seem to have been happy ones. The children were born in 1949 and 1951, respectively. The husband is an electrical engineer with an adequate salary. The wife graduated from Teachers' College at Columbia and taught school before the marriage. He was employed at Troy, New York, and in New Jersey prior to his employment in Maryland in 1956 where they purchased a home in Anne Arundel County. The husband testified that while they were living in New Jersey, the wife became increasingly moody and sought to avoid all social contacts. This improved after they moved to Maryland, but she soon began to manifest the same propensity. Early in 1959, she began to exhibit an antagonistic attitude towards him, accompanied by hallucinations concerning steel doors and bars, irrational talk, and neglect of the house and children. He testified that he finally realized that his wife was "a sick woman." He testified that in May, 1959, she refused to have further marital relations with him, although she testified they had relations as late as June 11, 1959. Upon advice of their minister he consulted a psychiatrist and was advised to have her examined by two medical doctors. She refused to see any doctors, but by a ruse he succeeded in his purpose. Under their certification she was committed to The Sheppard & Enoch Pratt Hospital and forcibly removed thereto in an ambulance on June 12, 1959. The doctors who examined and treated her there diagnosed her case as paranoid schizophrenia. His sister took care of the children. He visited her in the hospital from time to time but was advised that the chances for her complete recovery were slight.

Some time in October or November, he told the hospital authorities that he had decided to divorce her. He told them he

was constantly under pressure from her family to have her released and that they blamed him for her condition and for having her committed. He stated that he could not face the prospect of living with her again. He also discussed the matter of divorce with his wife. On December 12, 1959, "against medical advice", he "signed her out of the hospital". The hospital records, admitted in evidence by stipulation, show that her condition was noted as "improved", but prognosis "poor". Members of her family took her to her home, but the husband was not there. He admitted that he hoped her family would take her to New Jersey and relieve him of her care. He left a note saying that she should get in touch with his lawyer. He left a check for "your first week's support." The note concluded with the words "[g]oodbye, good luck." He never returned. The children continued to live with his sister.

The record shows clearly that the husband intended to sever the marital relation permanently. Cf. *Provenza v. Provenza*, 226 Md. 63. The question is whether he was legally justified in leaving. The test laid down in the cases is whether her conduct was such as to put him in fear of his life or to render it impossible for him to continue the marital cohabitation with health, safety and self-respect. *Smith v. Smith*, 225 Md. 282, 287.

The appellant relies strongly upon the case of *Kruse v. Kruse*, 179 Md. 657, for the proposition that she was legally responsible for her conduct even though it may have been caused by mental derangement or disease, short of insanity. Although in that case there was evidence of irrational actions difficult to reconcile with sane control, the chancellor found that she was not mentally incompetent but had full mental responsibility. Chief Judge Bond, for this Court, said (p. 664) : "There was unquestionably a lack of control, but the law does not undertake to distinguish among the various degrees of lack of control [short] of insanity, and select those which prevent a divorce and those which do not." See also 1 Nelson, *Divorce and Annulment* (2d ed.) § 4.21 and 9.06; Note, 19 A.L.R. 2d 144, 173; *Dochelli v. Dochelli*, 6 A. 2d 324 (Conn.). But see *Fawcett v. Fawcett*, 48 A. 2d 23 (Pa. Super.), *Stewart v. Stewart*, 90 A. 2d 402 (Pa. Super.), and

*Bolson v. Bolson,* 11 P. 2d 23 (Dist. Ct. Cal.). Judge Bond relied upon the earlier case of *Lynch v. Lynch,* 33 Md. 328, for the proposition that violent, outrageous conduct, rendering impossible the proper discharge of the duties of married life, amounted to cruelty of treatment and furnished ground for a divorce *a mensa* to a husband who deserted the home. But there was no proof of mental disease in that case.

On the other hand, in *Ritz v. Ritz,* 188 Md. 336, 343, the *Kruse* case was distinguished on the facts, and it was held that the husband was not justified in leaving the wife because her reprehensible conduct, caused by a mental disturbance for which she had once been committed to The Sheppard & Enoch Pratt Hospital, did not sufficiently endanger his life and health as to justify his leaving her. See also *Sause v. Sause,* 192 Md. 88, 93. Marriage imposes a duty to bear and forbear and to cherish in sickness and in health. It is not to be terminated for light causes or merely because of a desire to escape from an unpleasant and unhappy environment.

In the instant case it appears to be conceded that the appellee was not, and is not, mentally incompetent in a strict legal sense. She was able to testify in open court. We assume, without deciding, therefore, that she is legally responsible for her actions. Although there is no opinion in the record—and apparently no memorandum of the grounds for the court's decision was requested under Maryland Rule 18 c— the decree awarding alimony without divorce, which is in effect a separate maintenance, imports a finding that the husband deserted without just cause, as alleged in the bill. Alimony cannot be awarded except upon proof of a statutory ground. *Provenza v. Provenza, supra,* and cases cited. If the husband was justified in leaving because of her conduct, he could not be charged with her support in the absence of agreement. The finding of the chancellor, who saw and heard the witnesses, must stand unless clearly wrong. Maryland Rule 886 a.

In *Kruse v. Kruse, supra,* the wife's conduct was described as violent and outrageous. She made a number of serious assaults upon her husband, broadcast to the neighbors her suspicions and complaints, and even invaded his place of em-

ployment and complained to his superiors about his immoral relations with women at work there. Yet there was testimony that she could not be considered a seriously sick woman from a psychiatric point of view. In the instant case the wife withdrew into herself and avoided social contacts. There is little evidence of violence and none at all as to interference with his business. The only evidence of jealousy is his statement that she charged him privately with being enamored of screen actresses. His testimony as to a refusal of marital relations is uncorroborated and denied.

The most serious charge that can be brought against her is that she neglected her household duties and the children, whom she kept out of school just prior to the final episode. This fact, plus the evidence of irrational and typically paranoidal statements, fully justified the husband in taking steps to have her committed. He recognized that she was "a sick woman". Obviously, the situation had reached a crisis. However, as suggested in the report of the Director of Welfare to the court in the matter of custody, the husband did not explain to the children that their mother was ill and perhaps was at fault in permitting them to witness her forcible removal from the home. No doubt the husband and children had a painful experience. He testified that worry caused him to lose forty pounds. However, much of his subsequent discomfort seems to have been due to the pressure from, and extravagant accusations of, her family, who seemed to believe that she was not ill and that if she was, he was the cause of it all. The wife cannot be chargeable with their conduct, nor can the husband rely upon her absence from the home after commitment. The case turns upon her prior conduct, and under all the circumstances we are not satisfied that the chancellor was clearly in error in his finding of fact and therefore affirm the decree.

*Decree affirmed, costs to be paid by the appellant.*