LUTHER *v.* LUTHER

[No. 79, September Term, 1963.]

*Decided December 4, 1963.*

The cause was argued before HENDERSON, HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*John J. Brennan,* with whom were *Maguire & Brennan* on the brief, for appellant.

*Hyman Ginsberg,* with whom were *Benjamin K. Sugar, William R. Sutton* and *Ginsberg & Ginsberg* on the brief, for appellee.

SYBERT, J., delivered the opinion of the Court.

Warren M. Luther appeals from a decree of the Circuit Court for Baltimore County which granted a divorce *a vinculo matrimonii* to his wife, Lillian F. Luther, on the ground of desertion, with an alimony award of $25.00 a week. The only question presented is whether the actions of the wife, while suffering from mental illness, constituted constructive desertion so as to justify the husband in leaving the family home.

The parties were married in April 1939. Two children were born, both now emancipated. The wife has been affected by mental disease during the last few years. In March 1959 the husband had the wife committed, after examination by a physi-

cian, to the Springfield State Hospital, a mental institution. The appellant's main complaint before the commitment seems to have been that she failed to do her housework in a proper manner. She remained in the institution until June 1959. During her confinement she spent several weekends at home, when she performed the household chores in a manner satisfactory to her husband. When the appellant felt assured that the appellee would continue to perform her housework in a proper manner, he brought her home.

Then began a series of incidents which culminated in the separation of the parties. The appellee again failed to perform her household duties, and, in addition, there were several alleged acts of violence directed toward the appellant. The appellee admittedly threw at least one ash tray at her husband, and stood over him while he pretended to be asleep and made motions as though she were going to gouge out his eyes with her fingers. The appellant testified that on various occasions his wife clawed at his face with her fingernails, threw hot coffee in his face, spat in his face while he was eating with the children, threw ash trays at him several times, and used profane language in front of the children. Richard, the adult son, testified that the appellee had refused to do the housework; used vile language; attempted to hit the appellant with a baseball bat; threw a pressure cooker lid, a steam iron and dishes at the appellant on different occasions; and refused to eat with the family. Gloria Hopkins, the married daughter, corroborated the testimony of her father and brother.

On January 5, 1960 the appellant and the two children (Richard being then nineteen and Gloria being then fifteen and unmarried) moved out of the family home. The appellee was given no advance warning of their intention, and only learned of the impending departure when movers arrived to remove virtually all of the household furniture. At the direction of the appellant, the movers left only a bed, table, chair and lamp for the appellee's use. The house was left unheated, even though it was midwinter. There was little or no food in the house. The only money left for the appellee's use was a ten dollar money order, although the appellant periodically provided support money after the separation. The appellee continued to live in the house

for the next six weeks, during which time she was principally dependent on the charity of members of her church. A Reverend Mr. Holden, at the request of certain church members, visited the appellee and found her without food and the house cold. He had a supply of oil delivered and provided food. On February 24, 1960, at the instigation of the Reverend Mr. Holden, the appellee was again admitted to Springfield State Hospital, where she remained for a period of eight months.

The Chancellor found that during the period between appellee's first and second admissions to Springfield State Hospital, she was "mentally ill and not in full control of her faculties". The Chancellor felt that because of the appellee's mental condition, she was not responsible for her behavior during the intervening period, and that therefore she had not constructively deserted her husband. The Chancellor then found that the appellant's desertion of the appellee was not justifiable, awarded the appellee a divorce on the ground of desertion, and decreed alimony of $25.00 a week.

In cases, such as the present one, in arriving at a determination whether the husband was legally justified in leaving the wife, "[t]he test laid down in the cases is whether her conduct was such as to put him in fear of his life or to render it impossible for him to continue the marital cohabitation with health, safety and self-respect." *Stecher v. Stecher,* 226 Md. 155, 158, 172 A. 2d 515 (1961). See also *Smith v. Smith,* 225 Md. 282, 287, 170 A. 2d 195 (1961).

To support his contention that the appellee was guilty of constructive desertion, the appellant relies mainly on the cases of *Bryce v. Bryce,* 229 Md. 16, 181 A. 2d 455 (1962), and *Kruse v. Kruse,* 179 Md. 657, 22 A. 2d 475 (1941). In the *Kruse* case this Court held that a wife's violent conduct, not amounting to insanity, although there was a lack of control, justified a husband in leaving home and gave him ground for a divorce for constructive desertion when the wife's conduct was such as to "render impossible the continuation of matrimonial cohabitation with safety, health, and self-respect". But we think that *Kruse* is distinguishable on the facts. In that case this Court pointed out that the wife was never confined for mental derangement and that "as it turned out the case was

not one for confinement" (Dr. Guttmacher, a Baltimore psychiatrist, having examined her and reported that "she could not be considered a seriously sick person from the psychiatric point of view") ; that there was credible testimony that in the sight of persons other than her husband she ordinarily behaved in the manner of a lucid woman, and took good care of her minor child (this Court did not disturb the Chancellor's award of custody of the child to the wife) ; that "her testimony in the record, in respect to intelligence and clearness, could hardly be excelled"; and that the Chancellor stated his conclusion that the wife was not insane was based upon the testimony and "upon the demeanor of the plaintiff [wife] both on the witness stand, and as observed by the Chancellor while she sat at the trial table." But in the present case the Chancellor found, and we cannot say he was clearly in error, that the wife was mentally ill (in fact, after observing the wife on the witness stand he felt that she was still suffering from mental disorder at the time of the trial).

We also find *Bryce v. Bryce, supra,* distinguishable on the facts. There, this Court held that "mere high-strung nerves and unrestrained impulsiveness of a sane woman will not save the actions of the wife from amounting to legal desertion". In contrast with the facts in the instant case, it was pointed out in *Bryce* that the wife's mental disorder was not so great in its extent as to blind her to the nature and consequences of her acts, and that the testimony of two psychiatrists was to the effect that the wife's mental condition was not such as to render her committable to a mental institution. It was found that the conduct of the wife was such as to compel the husband to leave the home because it rendered impossible the continuance of marital cohabitation with safety, health and self-respect, and we concurred in the Chancellor's conclusion that the wife was mentally accountable for her actions and conduct, which, under the circumstances mentioned, amounted to constructive desertion on her part. In the present case, however, the Chancellor expressly found that the appellee was mentally ill and not responsible for her behavior.

The case which we consider controlling in the present inquiry is *Stecher v. Stecher, supra.* In that case there was evi-

dence of irrational and typically paranoidal statements and conduct on the part of the wife which resulted in her commitment to a mental institution. There was also evidence that she had neglected her household duties and her children. We distinguished the *Kruse* case, *supra,* on the ground that there was no proof of mental disease in that case, and held that even though the wife was said to be not insane "in a strict legal sense", her actions did not constitute constructive desertion which justified her husband in leaving her. In doing so, we applied the usual test, mentioned earlier herein.

In *Ritz v. Ritz,* 188 Md. 336, 52 A. 2d 729 (1947), cited in *Stecher,* it was held that the husband was not justified in leaving his wife because her objectionable conduct, caused by a mental disorder for which she had been committed to an institution, did not sufficiently endanger his life or render impossible marital cohabitation with health, safety and self-respect. As stated therein (at p. 341 of 188 Md.), "[i]f the wife's actions, which caused the husband to leave, were beyond her own control because of mental derangement, her forcing him to leave does not afford grounds for a divorce to him, because a competent will on the part of the wife is necessary to render her capable of desertion". This is the type of case which we have before us now. In spite of the violent nature of the appellee's conduct it apparently did not put the appellant in fear of his life, since many of the alleged acts took place several months before the parties separated and the appellant's own testimony showed that he could easily handle the appellee when she became violent. Nor were the actions of the appellee sufficient to render it impossible for the appellant to continue the marital relation with health, safety and self-respect. That the appellant's main complaint was that his wife refused to do housework seems to be borne out by the fact that he introduced in evidence at least ten photographs to show conditions of disarray in the home. But the appellant never offered to aid his wife, personally or by employing help, even though he admitted on the stand that he realized she was suffering from mental illness and that it was he who had her committed to Springfield the first time. His misunderstanding or lack of concern for his

wife's condition appeared to a large extent to be responsible for the deplorable conditions in the family home.

The Chancellor found that the acts of the appellee did not constitute constructive desertion, and that therefore the husband's departure from the home was unjustified and warranted a divorce for the wife. We cannot say that the Chancellor was clearly wrong, Maryland Rule 886 a.

*Decree affirmed; the appellant to pay the costs.*