H. DALE WHITAKER, APPELLANT, v. GILBERT G. STOUT ET AL., APPELLEES, MARVIN OLSON ET AL., INTERVENERS-APPELLEES.

91 N. W. 2d 44

Filed June 20, 1958. No. 34394.

*Dryden & Jensen,* for appellant.

*Hamer, Tye & Worlock* and *James M. Knapp,* for appellees Stout.

*Blackledge & Sidner,* for appellees Olson.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action in equity in which plaintiff prays for a dissolution of a partnership; for an accounting; for a finding that a corporation holds the assets of the partnership in trust; for a receiver; and for damages for breach of contract. Issues were made and trial was had on the questions of whether or not a partnership was created; whether a corporation was organized; and whether the plaintiff was estopped to assert the existence of a partnership.

Plaintiff appeals. We affirm the judgment of the trial court.

A petition in intervention was filed by Marvin and Florence Olson, vendors of a stock of hardware and furnishings, to defendant Gilbert Stout. The issues presented by the intervention were not tried nor determined and are not in issue here. No further mention need be made of that part of the litigation.

The individual defendants will herein be referred to

by name. The Kearney Hardware, Incorporated, will be referred to as the corporation.

The defendant Gilbert Stout desired to purchase a hardware store in order that he might go into business in association with his father, Clarence Stout. Plaintiff worked as a traveling salesman for a wholesale hardware firm. The firm instructed plaintiff to get in touch with Gilbert Stout and assist him. Ultimately the two men came to Kearney, Nebraska, and there investigated a stock of hardware which the Olsons desired to sell. Clarence Stout was there also.

Gilbert Stout purchased the stock and fixtures for an agreed consideration of $60,000. He made a substantial payment which gave him the right of possession. He entered into a lease on the building occupied by the business. This occurred on September 14, 1954. Evidently there was some discussion between plaintiff and Gilbert Stout about plaintiff working as manager and having an interest in the business. Plaintiff alleged that he and Gilbert Stout entered into an oral partnership agreement on that date. Plaintiff further alleged that it was agreed that he "would furnish the sum of $1600.00 immediately for the purchase of said hardware store"; that he was to operate and manage it for a salary of $100 weekly; that out of the first 20 percent of the net profits on a yearly operation this plaintiff would receive 10 percent; that out of the next 80 percent of the net profits plaintiff was to receive 50 percent; and that these shares of profits were to be paid to Gilbert Stout to be applied on plaintiff's purchase of a half interest in the store at which time the net profits were to be divided equally.

Plaintiff testified that the agreement was made while they were standing outside the store after the purchase had been completed; that he agreed to put up what money he could "raise at the moment"; and that he was to draw the percentages stated until his "half was paid off." He further testified that Gilbert Stout asked

him if he wanted a contract drawn up, that he assented, and that Gilbert Stout agreed to have one drawn up in Iowa and send it to plaintiff. Plaintiff makes no further reference to any discussion about or request for a contract of partnership. He testified that 3 or 4 weeks later he and his wife decided they could "raise approximately $5,000" although a few questions later he testified that he told Gilbert Stout on September 14, 1954, that he could raise approximately $5,000. He testified that in April 1955, he sold property on which he realized $2,750 but that was after this matter was concluded as recited later herein.

Plaintiff paid Gilbert Stout $500 on October 18, 1954; $1,000 on October 31, 1954; and $100 on January 30, 1955.

It is patent from this evidence of plaintiff that at best the parties discussed a contract of partnership that was later to be executed; that it was never done; that plaintiff's allegation that he would furnish "immediately" the sum of $1,600 for the purchase price was bottomed on not what was discussed, but what was later done by way of payment; and that plaintiff never was in a position to pay $5,000 on his alleged contract.

By contrast defendants in their answer alleged that Gilbert Stout employed plaintiff as manager; that plaintiff desired to purchase an interest in the business and was advised "that a partnership would be formed if and in the event" plaintiff would pay 10 percent of the total cost of the business; that the total cost was approximately $70,000; and that plaintiff contributed toward the purchase price only the sum of $1,600. Gilbert Stout, however, testified that he never discussed the matter of a partnership with plaintiff. His answer alleges the fact to be otherwise. However, it is patent that plaintiff did not establish the contract he alleged or any contract of partnership upon which to found his cause of action and that the trial court properly so found.

Some 3 or 4 weeks after September 14, 1954, Clarence Stout returned to Kearney and became active in the

business. Later, in October, Bernetha Rash, a sister of Gilbert Stout, and her husband came to Kearney and were employed in the store as saleswoman and book-keeper, respectively. Both Clarence Stout and Bernetha Rash made substantial investments in the business on a permanent basis by payments to Gilbert Stout. It is inferable that plaintiff knew of those investments and plans. There is no evidence that plaintiff at any time told either of these parties of his claim of partnership and agreed division of profits that would substantially affect both the return on and the capital value which they had invested.

As above stated the property was purchased by Gilbert Stout for an agreed consideration of $60,000. The store fixtures were remodeled and general improvements were made which brought the total cost to $70,000.

Plaintiff testified that sometime in October Gilbert Stout talked with him about forming a corporation to run the business. Later he fixed this conversation as in the "fall" and in December.

Plaintiff testified that he agreed, provided it did not affect his partnership agreement with Gilbert Stout. He does not undertake to explain how the alleged partnership agreement could be carried out by Gilbert Stout consistent with the corporation that was later created and in which at all times plaintiff took an active part.

The date when the discussions about forming a corporation took place becomes material for this reason. The first payment of $500 to Gilbert Stout by plaintiff was by check dated October 18, 1954. It carried the notation "For Stock in Hardware Store." Obviously where used in this connection the word "stock" relates to an interest in a corporate entity. Plaintiff does not contend otherwise. The second payment of $1,000 to Gilbert Stout was dated October 31, 1954. The check carries the notation "For Hardware Store Stock." Clearly this payment was made after the first conversations to form a corporation if it occurred in October

as plaintiff first testified. The third payment of $100 was by check dated January 30, 1955. This check bears on the back the statement "this check is part payment for interest in Kearney Hdwe Co. Kearney Nebr." This payment was obviously after the organization of a corporation had been agreed upon.

Plaintiff's evidence in this regard coincides with that of Gilbert Stout. He testified that on October 31, 1954, he came to Kearney from his home in Iowa to make a payment to the Olsons; that on that day plaintiff made an appointment with a lawyer; and that plaintiff and Gilbert Stout then discussed with the lawyer the matter of forming a corporation. It was on that day that plaintiff paid Gilbert Stout the $1,000 "For Hardware Store Stock."

It accordingly is quite apparent that plaintiff made the payments to Gilbert Stout with full knowledge that he was investing in stock of a corporation to be later formed for this business venture.

In February 1955, proposed articles of incorporation and bylaws were prepared and submitted to the incorporators. Plaintiff was given copies of these documents and read and signed the articles along with the other named incorporators who were Bernetha Rash, Clarence C. Stout, Lazetta Stout, and Gilbert G. Stout. Here in some instances middle initials were used. The parties were the same. The articles of incorporation bearing, among others, plaintiff's signature were filed with the Secretary of State on February 23, 1955. The notice of incorporation was published in Kearney beginning February 25, 1955.

The bylaws were signed by the same parties who signed the articles of incorporation. Among other things the signed bylaws provided that the number of directors shall be "at least three" and in addition such number as the board of directors may determine from time to time.

The organization meeting was held on March 1, 1955.

Gilbert Stout did not attend. Plaintiff did attend and was present throughout. The minutes of the meeting of the stockholders recite that plaintiff made a motion to amend the bylaws "that the number of Directors shall be 4, namely Gilbert G. Stout, Clarence C. Stout, Bernetha Rash and H. Dale Whitaker. The motion was seconded and carried." Bernetha Rash, who acted as secretary, confirmed the correctness of the minutes. Plaintiff denied making the motion. The four directors named are four persons who are shown to have made investments in the business. The minutes of the meeting of the board of directors show Whitaker present and Gilbert G. Stout absent, and that Clarence C. Stout had authority by "proxy" to act for him. They show the election of officers including plaintiff as vice president. They show the carrying of a motion to purchase the "Kearney Hardware Co." by the corporation for $70,000. They also show the direction to issue stock "according to the interest" in the Kearney Hardware Co. and, among others, "16 shares" to plaintiff. The articles provided for stock at par value of $100 a share.

Plaintiff denies making the motion to amend the bylaws or participating in the other matters, and the knowledge that he was named as a director. He, however, admits that he knew he was elected vice president of the corporation.

We conclude that plaintiff entered into and remained in the incorporation proceedings with full knowledge that the corporation was to supplant the temporary investment arrangements theretofore existing. He acquiesced in everything that was done.

Beginning March 1, 1955, the corporation took over and handled and conducted the business—again with plaintiff's knowledge and acquiescence. The stock was issued dated March 1, 1955. Defendants' evidence is that it was delivered to the stockholders on March 2, 1955. Plaintiff, however, testifies that his stock was delivered to him on March 22, 1955, the date he was

notified of his discharge as manager. In either event he received the stock and has since retained it.

Plaintiff made no contention at that time that he had an interest in the business as a partner. Upon his discharge as manager, he immediately demanded that Gilbert Stout buy his stock for the amount he had paid for it. He subsequently made other direct and indirect efforts to persuade Gilbert Stout to purchase his stock. He filed his petition in this action July 25, 1956. He, in his petition, for the first time subsequent to the incorporation proceedings, advanced the partnership contention to the other incorporators. In the meantime the corporation had assumed ownership of the property and had conducted the business as that of a corporate entity.

The applicable rules are: "Estoppel" means the preclusion of a person from asserting a fact, by previous conduct inconsistent therewith, on his own part or the part of those under whom he claims, or by an adjudication upon his rights which he cannot be allowed to call in question. To constitute an estoppel, in the absence of false representations by the party sought to be estopped, he must have been guilty of such conduct as to have given the person pleading the estoppel reason to believe that a state of facts existed inconsistent with those now asserted against him in reliance on which he acted. When a person knowing his rights takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right. State v. Nielson, 163 Neb. 372, 79 N. W. 2d 721.

We conclude, as did the trial court, that plaintiff did not prove the existence of the partnership which he claims existed. We conclude also, as did the trial court, that his conduct in remaining silent as to partnership claims while others were investing in this busi-

ness; in remaining silent as to partnership claims and participating in the organization of the corporation; and remaining silent as to partnership claims thereafter for a period of over 16 months while others acted in full reliance on the corporate rights and while he retained his stock certificate and acted as owner thereof, all require that the plea of estoppel be sustained.

Plaintiff argues an assignment as to a matter that was merely suggested to the trial court; was not presented by any motion requiring a ruling by the trial court; and was apparently abandoned as soon as advanced. Nevertheless we have examined the record as to it and find it to be so without merit that we do not deem it worthy of discussion.

The judgment of the trial court is affirmed.

AFFIRMED.