DIANE L. WELCH, APPELLEE AND CROSS-APPELLANT, V. RICHARD A. WELCH, JR., APPELLANT AND CROSS-APPELLEE.

519 N.W.2d 262

Filed July 22, 1994.    No. S-92-883.

Richard A. Welch, Jr., pro se, and, on brief, George T. Babcock, of Babcock & Associates, for appellant.

Curtis A. Sikyta for appellee.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

WHITE, J.

This case arises from a decree of dissolution and a series of related motions. In January 1988, Diane Dugan (Dugan), then known as Diane L. Welch, filed a petition for dissolution of her marriage to Richard A. Welch, Jr. (Welch). Welch filed a special appearance, a motion to transfer jurisdiction to Illinois (his claimed state of legal residence), and a motion for a stay under the Soldiers' and Sailors' Civil Relief Act. The district court denied the special appearance, finding that it had jurisdiction over Welch, and denied both motions.

In November 1988, the court entered its decree of dissolution. The decree awarded custody of the parties' two minor children to Dugan and awarded Dugan $280.80 per month in child support. The decree ordered Welch to maintain health and dental coverage for the children, and provided that Dugan would be responsible for any sums not covered by the insurance. The decree also awarded Dugan $1,500 in attorney fees and $583 in travel expenses. The remaining portions of the decree are not relevant to the present appeal. The decision was not appealed.

In June 1991, represented by a new attorney, Welch filed a "cross-petition" which alleged that his divorce attorney had committed various acts of fraud. Welch requested that the court vacate the divorce decree. The parties and the court have treated this cross-petition as a motion to vacate, and we will do likewise. In October 1991, Dugan demurred to the motion to vacate, and Welch filed a motion for a continuance.

On November 12, 1991, the district court held a hearing on Welch's motion to vacate. The court overruled the demurrer, denied the motion for a continuance, and denied the motion to vacate.

There followed a series of three motions. Welch timely filed a motion for new trial and also filed a motion to determine sums due. Dugan filed a motion, under the Nebraska Child Custody Jurisdiction Act (NCCJA), Neb. Rev. Stat. § 43-1201 et seq. (Reissue 1988), to transfer jurisdiction to Colorado, where she

and the children had moved.

On August 31, 1992, the district court held a hearing on the three motions. The court denied Welch's motion for new trial, determined various sums due, and granted Dugan's motion to transfer jurisdiction. Welch appealed and Dugan cross-appealed. Under our authority to regulate the caseloads of the appellate courts of this state, we removed the case to this court.

On appeal, Welch asserts that the district court erred in failing to vacate the decree and in transferring jurisdiction to Colorado. On cross-appeal, Dugan asserts that the district court erred in determining the sums due with respect to child support, fees, and costs. We address each alleged error in turn.

Welch has assigned as error the district court's failure to vacate the decree. Welch's notice of appeal is not timely with respect to the court's denial of his motion to vacate. Technically, then, this assignment of error is incorrect.

Welch's technical mistake is not fatal. If an appellant has assigned errors properly presented in a motion for new trial, then the appellant need not also assign as error the overruling of the motion for new trial. See *Maher v. State*, 144 Neb. 463, 13 N.W.2d 641 (1944). Welch's motion for new trial alleges that the denial of his motion to vacate was contrary to law. Therefore, Welch has preserved the substantive issue of vacating the decree for our review and has adequately assigned the error.

The district court's failure to vacate the decree arrives before this court by way of Welch's motion for new trial, which was denied. An appellate court will affirm the district court's denial of a motion for new trial absent an abuse of discretion. *Kopecky v. National Farms, Inc.*, 244 Neb. 846, 510 N.W.2d 41 (1994); *Wolfe v. Abraham*, 244 Neb. 337, 506 N.W.2d 692 (1993). To determine whether the district court correctly denied Welch's motion for new trial, we must determine whether, as Welch contends, the district court's failure to vacate the decree was contrary to law.

Welch first argues that the court should have vacated the decree based on various acts of fraud committed by his divorce attorney. A litigant seeking the vacation of a prior decree or judgment after term may take one of two routes. *De Vaux v.*

*DeVaux*, 245 Neb. 611, 514 N.W.2d 640 (1994). The litigant may proceed either under Neb. Rev. Stat. § 25-2001 (Reissue 1989) or under the district court's independent equity jurisdiction. *DeVaux, supra.* See, *Joyce v. Joyce*, 229 Neb. 831, 429 N.W.2d 355 (1988); *Emry v. American Honda Motor Co.*, 214 Neb. 435, 334 N.W.2d 786 (1983). Welch concedes that his action does not fall within the confines of § 25-2001 and therefore that he may proceed, if at all, under the court's general equity jurisdiction.

Welch alleges that his divorce attorney committed numerous fraudulent acts. The first set of allegedly fraudulent acts revolves around a special appearance. Welch testified that he initially hired his divorce attorney to enter a special appearance *contesting* jurisdiction. Through what appears to have been a typographical error, the divorce attorney filed a special appearance *consenting* to jurisdiction. Realizing the error, the divorce attorney asked the district court for leave to amend the special appearance. The district court found that Welch had consented to jurisdiction and also that by asking for affirmative relief, Welch had subjected himself to the jurisdiction of the court. Welch testified that his divorce attorney failed to advise him of the flawed special appearance and instead told him that the judge had said, "I have jurisdiction because I have jurisdiction." In addition, Welch claims, his divorce attorney never told him how to appeal the denial of his special appearance.

The second set of allegedly fraudulent acts revolves around a motion for a stay under the Soldiers' and Sailors' Civil Relief Act. Welch's divorce attorney did file a motion to stay the proceedings. The district court, however, found that Welch had ample time to prepare his case and that the motion was untimely. Welch testified that his divorce attorney told him that the district court had ruled that the Soldiers' and Sailors' Civil Relief Act was irrelevant.

The third set of allegedly fraudulent acts revolves around the procedures for appeal. Welch testified that his divorce attorney advised him that to appeal his case, Welch would have to ask the trial judge's permission. According to Welch, his divorce attorney further advised him that the judge "had it out" for

Welch and was not going to do anything for Welch. As to alternative remedies, Welch claims, his divorce attorney suggested that Welch sue the judge in federal court but added that because he, the attorney, was not sworn before the federal bench, Welch would have to find a new attorney.

Based on these alleged acts of fraud, Welch sought the vacation of the dissolution decree. Some courts have found that fraud perpetrated by an attorney on his own client can form the basis for vacating a decree. See, *United States v. Throckmorton*, 98 U.S. (8 Otto) 61, 66, 25 L. Ed. 93 (1878) (stating, in dicta, that "where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat . . . there has never been a real contest in the trial or hearing of the case," and the judgment may be set aside); *Leeker v. Leeker*, 23 Ariz. 170, 202 P. 397 (1921) (following *Throckmorton, supra*, court vacates divorce decree because wife's attorneys had financial incentive to disregard, and did disregard, wife's instructions to obtain a settlement and a legal separation but not a divorce). See, also, *Rhoades v. Rhoades*, 157 Cal. App. 3d 169, 211 Cal. Rptr. 531 (1984) (stating that default divorces should be set aside readily, court set aside default divorce decree because husband's divorce attorney reassured husband and then did nothing to represent husband, allowing default to be entered); *Younkins v. Younkins*, 121 Ill. App. 2d 416, 257 N.E.2d 521 (1970) (court vacates default divorce decree because wife's attorney consented to a default judgment without wife's authority). These cases are based on the principle that fraud vitiates everything it touches. See, *Throckmorton, supra*; *Leeker, supra*.

A contrasting principle is that a party should not be forced to answer for the fraud of opposing counsel. See *Brooks v. Brooks*, 184 Md. 419, 41 A.2d 367 (1945) (despite wife's allegations that her attorney acted with reckless disregard for her rights, court refused to vacate divorce decree). This court has recognized this principle in the context of a negligence action. See *Sargent Feed & Grain v. Anderson*, 216 Neb. 421, 344 N.W.2d 59 (1984).

In *Sargent Feed & Grain*, the plaintiff sent the defendants requests for admissions, and the defendants failed to respond

within 30 days. The plaintiff filed a motion for summary judgment based on the admissions, and the court granted the plaintiff summary judgment. After obtaining new counsel, the defendants filed a motion to vacate the judgment. Reasoning that the defendants' original counsel had mishandled the case, depriving the defendants of their day in court, the court granted the motion to vacate. The case proceeded to trial, and the defendants prevailed.

On appeal, this court held that the trial court had improperly granted the motion to vacate. We found that the negligence of the defendants' counsel did not justify vacating the judgment in favor of the plaintiff. The rationale for this decision was that the plaintiff should not be deprived of a favorable judgment due to the neglect of the opposing attorney:

> The neglect and fault of the defendants' [original counsel] could not be a basis for setting aside the judgment in this case. Certainly his conduct is not chargeable to the plaintiff. *If anyone must lose because of the neglect of a lawyer, it should be the party who selected and employed that lawyer as his counsel.*

(Emphasis supplied.) *Id*. at 425, 344 N.W.2d at 61-62.

Although Welch's motion to vacate is based on fraud and not negligence or neglect, we find that the rationale of *Sargent Feed & Grain* applies. Welch's dispute is with his divorce attorney, not with Dugan. There is no suggestion that Welch's failure to timely appeal the denial of his special appearance or the decree is a result of any act of Dugan's; yet the relief prayed for is against Dugan. Although both Welch and Dugan, arguably, can be seen as innocent parties in this legal quagmire, it is Welch, and not Dugan, who must ultimately be responsible for the acts of Welch's own divorce attorney. The district court properly refused to vacate the decree on the basis of the alleged fraud of Welch's divorce attorney.

Welch also argues that the district court should have vacated the decree because it did not have personal jurisdiction over him. At the dissolution hearing and in the decree, the district court stated that it had jurisdiction over both Dugan and Welch. These findings were not timely appealed. Welch argues that he could not file a timely appeal because his attorney lied to him about the process for appeal. The acts of Welch's attorney,

as we have just explained, are not cause for a court to vacate a decree.

Welch cites three cases which, he claims, compel the court to vacate the decree on the basis of a lack of personal jurisdiction: *Kaufmann v. Drexel*, 56 Neb. 229, 76 N.W. 559 (1898); *Kepley v. Irwin*, 14 Neb. 300, 15 N.W. 719 (1883); and *Eaton v. Hasty*, 6 Neb. 419, 29 Am. Rep. 365 (1877). These three cases stand for the following proposition: While a court will presume that an attorney appearing before the court on behalf of a litigant is authorized to do so, a court may vacate a judgment if the litigant later shows that the attorney appearing on his behalf was unauthorized to do so. In other words, if Welch had never hired his divorce attorney but the attorney had appeared in court purporting to represent Welch, then all of the acts of the attorney would be void and the judgment based on those acts would be void.

The proposition embodied in the three cases cited by Welch does not apply to Welch. The proposition concerns the acts of an *unauthorized attorney*; Welch's case concerns the *unauthorized acts* of an *authorized attorney*. A litigant is not responsible for the acts of an attorney that he has not hired. However, as we have explained above, a litigant is responsible, as against his opponent, for the acts of an attorney that he has hired. Welch's argument that the decree should be vacated because the district court lacked personal jurisdiction is without merit. The district court's denial of Welch's motion to vacate was not contrary to law. Accordingly, the district court did not abuse its discretion in denying Welch's motion for new trial.

Welch next contends that the district court erred in transferring jurisdiction to Colorado under the NCCJA. Upon Dugan's motion to transfer jurisdiction under the NCCJA, the district court found that Wheeler County, Nebraska, was an inconvenient forum. The court granted Dugan's motion to transfer and ordered Dugan to file an action in the district court for Weld County, Colorado, before September 14, 1992, at 1 p.m. or report for a hearing on a contempt motion.

As a threshold matter, we note that the NCCJA does not authorize a court to *transfer jurisdiction*. The NCCJA allows a court to *decline jurisdiction* under certain circumstances. We will treat Dugan's motion to transfer jurisdiction as a motion to

decline jurisdiction.

The NCCJA allows a court to "decline to exercise its jurisdiction any time *before making a decree* if [the court] finds that it is an inconvenient forum to make a custody determination." (Emphasis supplied.) § 43-1207(1). A custody decree is defined by the NCCJA as "a custody determination contained in a judicial decree or order made in a custody proceeding." § 43-1202(4). A custody determination includes court decisions providing for the custody of a child or visitation rights, but does not include decisions relating to child support or other monetary obligations. § 43-1202(2).

At the time the motion to decline jurisdiction was filed, neither party had requested a custody determination. The record does not reveal any custody proceedings pending before the district court in Nebraska. Moreover, it appears that there were no custody proceedings pending before the district court in Colorado. Dugan, in effect, is asking Nebraska to decline jurisdiction in the abstract.

"[A] court decides real controversies and determines rights actually controverted, and does not address or dispose of abstract questions or issues that might arise in a hypothetical or fictitious situation or setting." *State v. Baltimore*, 242 Neb. 562, 568, 495 N.W.2d 921, 926 (1993). Accord *Mullendore v. Nuernberger*, 230 Neb. 921, 434 N.W.2d 511 (1989). The existence of an actual case or controversy is necessary for the exercise of judicial power in Nebraska. *Baltimore, supra*; *Mullendore, supra*. Without an actual case or controversy, a court has no opportunity to exercise judicial power and, consequently, has nothing to decline. In the absence of an actual dispute, the district court had nothing over which to take—or decline—jurisdiction.

Dugan might argue that she was asking the court to decline its continuing jurisdiction over child custody. Jurisdiction is a court's power or authority to hear a case. *Millman v. County of Butler*, 235 Neb. 915, 458 N.W.2d 207 (1990); *Blitzkie v. State*, 228 Neb. 409, 422 N.W.2d 773 (1988). Accord *Baltimore, supra*. Accordingly, continuing jurisdiction means that the court is continually empowered to hear matters of child custody and visitation; it does not mean that the court is continually

*exercising* jurisdiction. A court's continuing jurisdiction over matters of child custody and visitation does not, by itself, constitute a custody determination and therefore cannot be the basis for declining jurisdiction. The district court improperly declined jurisdiction under the NCCJA.

On cross-appeal, Dugan first contends that the trial court erred in abating child support. An appellate court reviews modifications of child support de novo on the record and will affirm the judgment of the trial court absent an abuse of discretion. *Marr v. Marr*, 245 Neb. 655, 515 N.W.2d 118 (1994); *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994). In order to properly address this assignment of error, we briefly summarize the relevant portions of the record.

On August 2, 1991, about 6 weeks after Welch filed his motion to vacate, the district court held a hearing on the issue of temporary visitation. The court granted specific visitation, including telephone visitation, pending trial on the motion to vacate.

Welch subsequently filed an application for contempt, and on August 19, the district court held a hearing on the application. At this hearing, Welch testified that he had been unable to exercise his temporary visitation; he had not reached the children on the phone and had not received an address so he could meet the children in person. He also testified that he had not seen the children since 1988 and had not spoken with them on the phone for over a year. Finding that the recent visitation problems were a result of miscommunication between Dugan and her attorney, the court decided not to hold Dugan in contempt. However, the court did state that Dugan had "been pulling [Welch's] chain" by failing to allow telephone calls and visitation. The court stated that it had asked the parties and counsel to try and work something out but that the parties were "at logger-heads." The court ordered very specific visitation so that neither party could claim to be mistaken about the arrangements.

Welch soon filed another application for contempt, claiming that Dugan had again failed to allow visitation, and on October 1, the district court held a hearing on the application. Dugan did not appear personally at the hearing. According to her

attorney, Dugan had argued the case in Colorado and believed Colorado had jurisdiction. The court stated that it could not hold Dugan in contempt without her personal presence. However, the court issued a bench warrant for Dugan's arrest. The court then heard evidence as to visitation that had been denied. The court abated child support as of October 1, 1991.

The record contains sparse information as to visitations occurring after this hearing. It appears that Welch and his mother visited with the children in Colorado in early October 1991. It also appears that Welch attempted a visit during late November and early December. Welch has testified that he has spent approximately $6,000 attempting to exercise visitation. There is no information in the record as to the success or extent of these attempts.

On August 31, 1992, the district court held a hearing on Welch's motion to determine sums due. The court's journal entry states that "child support was abated by this Court as [sic] October 1, 1991, and has not, and will not be reinstated." At the hearing, the court elaborated on its reasons for abating child support:

> The last thing as to child support, child support was abated October 1, 1991 and the reason for that was that [Dugan] was failing to obey the orders of the Court as to visitations. It appears there has been a continuing problem probably due to both parties' fault. The Court is not going to change that, that was not changed by the parties or counsel as of this date and it remains abated as of this date.
>
> . . . .
>
> . . . The mother has the custody of the children. The father is entitled to reasonable visitation of those children, including telephone visitation. If you would follow the orders of the Court in that area you would not have any problems. The father is entitled to reasonable visitation. He may have a duty of support but at this point since neither party — at least [Dugan] does not seem to want to follow the orders of the Court as to visitation. I am not going to order any child support.

The question which we must now determine is whether the

district court erred in abating child support. We find that it did not.

As a general rule, the custodial parent's right of support and the noncustodial parent's right of visitation are entitled to separate enforcement. A failure to pay child support does not justify a parent's unilateral withdrawal of visitation rights, and a failure to allow visitation does not justify a parent's unilateral nonpayment of support. See, *State v. Beck*, 238 Neb. 449, 471 N.W.2d 128 (1991); *Conrad v. Conrad*, 208 Neb. 588, 304 N.W.2d 674 (1981); *Eliker v. Eliker*, 206 Neb. 764, 295 N.W.2d 268 (1980). "Neither of the parties is authorized to interfere with the court's orders and only the court can determine what, if any, adjustments should be made." *Id.* at 773, 295 N.W.2d at 273.

That is not to say, however, that a court is without power to suspend child support. The frustration of enforcing visitation rights from hundreds of miles away cannot be ignored. *Dep't of Public Aid v. Peterson*, 156 Ill. App. 3d 657, 509 N.E.2d 146 (1987). The power of a court to suspend child support should be exercised only as "a last resort or where it is apparent that to do so affords the only remedy that can reasonably be expected to fit the mischief." *Biesecker v. Biesecker*, 190 Neb. 808, 809, 212 N.W.2d 576, 577 (1973). Specifically, we have held that a court may suspend child support payments when the custodial parent deprives the noncustodial parent of visitation and there is no showing that the children are in need. See *McGee v. McGee*, 190 Neb. 415, 209 N.W.2d 339 (1973).

Since the divorce, Dugan has effectively deprived Welch of any meaningful visitation. Welch did not see the children at all from 1988 until August 1991. Beginning in August 1991, the district court attempted to reunite Welch and his children. Largely unsuccessful in this attempt, the court ordered child support abated. There has been no indication that the abatement, effective October 1, 1991, has adversely affected the children or that they are lacking in care. In August 1992, the district court found that there had been a continuing problem with visitation and ordered child support to remain abated. We conclude that the district court did not err in abating child support.

Dugan last contends that the district court erred in determining various sums due. We briefly address each of the arguments presented in Dugan's brief. In so doing, we are mindful that, as to matters of law, an appellate court has an obligation to reach its own independent conclusion. *Duggan v. Beermann*, 245 Neb. 907, 515 N.W.2d 788 (1994); *Goeke v. National Farms, Inc.*, 245 Neb. 262, 512 N.W.2d 626 (1994).

Dugan argues that the district court erred in assessing too little interest on delinquent child support payments. The court ordered that interest on child support should be calculated at 14 percent before October 1, 1991, and 6.86 percent thereafter.

It is undisputed that child support payments become delinquent the day after they are due, and interest begins to accrue 30 days later. See Neb. Rev. Stat. § 42-358.02(2) (Cum. Supp. 1992). At issue, however, is the proper rate of interest. The rate of interest on delinquent child support payments is governed by § 42-358.02, which was amended in 1991.

Before amendment, § 42-358.02 provided that interest accrued at the rate specified by Neb. Rev. Stat. § 45-104.01 (Reissue 1988), which prescribed a flat rate of 14 percent per annum. See § 42-358.02(1) (Reissue 1988). The amendments to § 42-358.02 became effective on September 6, 1991. The amendments do not affect interest which accrued prior to September 6. See § 42-358.02(5) (Cum. Supp. 1992).

As of September 6, 1991, delinquent child support payments accrue interest under the amended statute. See § 42-358.02(5) (Cum. Supp. 1992). Under the amended statute, interest accrues at the rate specified by Neb. Rev. Stat. § 45-103 (Reissue 1988), which prescribes a fluctuating rate related to certain bond yields. See § 42-358.02(1). The amended statute directs the court to apply the rate "in effect on the date of the most recent order or decree." *Id.*

Applying these statutes to the present action should have resulted in a three-part order with respect to interest on delinquent child support payments. First, until September 5, 1991, under the prior statute, interest accrued at the rate of 14 percent per annum. Second, beginning on September 6, under the amended statute, interest accrued at the rate, established pursuant to § 45-103, in effect on the date of the "most recent

order or decree." See § 42-358.02(1). On September 6, the most recent order or decree was the dissolution decree, entered on November 18, 1988. Therefore, beginning on September 6, child support accrued at the rate in effect on November 18, 1988. Third, on October 1, 1991, the district court ordered an abatement of child support. This order supplanted the decree as the "most recent order or decree." Therefore, beginning on October 1, interest should have been calculated at the rate which was in effect on that date.

The district court failed to account for the effective date of the amended statute as triggering a change in the applicable interest rate. As a result, the court erred, as a matter of law, in calculating the interest on delinquent child support payments. On remand, the district court shall calculate interest for the following periods at the following rates: Until September 5, 1991, interest shall be calculated at 14 percent per annum. From September 6 until September 30, 1991, interest shall be calculated at the rate, established pursuant to § 45-103, in effect on November 18, 1988. As of October 1, 1991, interest shall be calculated at the rate, established pursuant to § 45-103, in effect on October 1.

Dugan next argues that the district court erred in refusing to award her payment of various medical and dental expenses. The decree provides that Welch shall maintain health and dental insurance for the children and that Dugan shall be responsible for any sums not covered by insurance. Dugan submitted evidence demonstrating that she and her husband had paid insurance premiums from October 1989 until May 1992 totaling $2,040, that expenses from March 1987 until May 1992 totaled $4,463.10, and that the insurance had covered $1,109.53 of these expenses.

In ruling on this claim, the court stated:

As to medical payments or medical expenses, [Welch] has testified insurance was available. Both parties have apparently avoided each other from day one in this case and have not communicated and come in here at this late date after the payments have already been incurred, it is too late to apply those toward any insurance coverage, it is too late as far as the Court is concerned and [Dugan] is

estopped from asserting those medical payments to [Welch].

Accordingly, the district court refused to order any payments for medical expenses.

When a person, knowing her rights, takes no steps to enforce those rights until the adverse party has, in good faith, changed his position such that he could not be restored to his former state if the rights are enforced, the delay becomes inequitable and the person is estopped from asserting the rights. *Nathan v. McKernan*, 170 Neb. 1, 101 N.W.2d 756 (1960); *Whitaker v. Stout*, 166 Neb. 850, 91 N.W.2d 44 (1958); *State v. Nielsen*, 163 Neb. 372, 79 N.W.2d 721 (1956). This estoppel rule parallels the doctrine of laches, which bars a claimant whose unreasonable delay in protecting his right has worked inequitably to disadvantage or prejudice another. See, *Kracl v. Loseke*, 236 Neb. 290, 461 N.W.2d 67 (1990); *Hanthorn v. Hanthorn*, 236 Neb. 225, 460 N.W.2d 650 (1990). See, also, 1 Dan B. Dobbs, Dobbs Law of Remedies § 2.3(5) at 89 (2d ed. 1993) ("[e]stoppel is closely related to and sometimes identical with laches." If the plaintiff is barred only by an unreasonable and prejudicial delay, laches appears to be merely an instance of estoppel). Because the district court decided the case on the ground of estoppel, we will review the decision on that basis.

As reflected in the record, Dugan purchased numerous medical and dental services for the children. The decree clearly provides that Welch is obligated to maintain medical and dental coverage for the children. However, Dugan never attempted to enforce this provision of the decree.

Dugan testified that she had attempted to contact Welch at various addresses, without success. She also testified that she never received any information from Welch regarding insurance. However, there is no evidence to suggest that Dugan ever asked a court to enforce the decree with respect to medical or dental bills.

Furthermore, although Welch may have been difficult, or even impossible, to contact at some points in time, some of the medical bills presented by Dugan were incurred at times when Dugan clearly could have contacted Welch. For example, Welch was in the U.S. Navy until March 1989; until that time, Dugan

could have contacted Welch through the Navy. Welch filed his motion to vacate in June 1991; after that time, Dugan could have contacted Welch through his attorney of record. Based on the record, we are unable to say that Dugan made any reasonable efforts to enforce her rights.

If Dugan's rights were now to be enforced, Welch would suffer prejudice. At the August 31, 1992, hearing, Welch testified as to his insurance coverage as follows: Welch was separated from the Navy in March 1989, and his medical benefits ceased in July 1989. In August 1989, Welch found employment with Bob O'Connor Ford, which offered a family health plan. From August 1989 until May 1990, Welch and the children were covered under this family health plan. In May 1990, Welch's employer changed health plans. Under the new plan, in order to have the children covered outside the local area, certain documents had to be completed by the custodial parent. Welch testified that he attempted to have the documents sent to Dugan in O'Neill, Nebraska. Welch also contacted Dugan's counsel and the clerk of the court in order to find out where Dugan was located. Additionally, Welch spoke with Jan Krotter, Wheeler County Attorney, regarding the insurance. Effective August 11, 1991, Welch was discharged from Bob O'Connor Ford. Since that time Welch has been receiving unemployment compensation. Welch testified that the "Public Aid Department" would authorize medical coverage for the children only if they were in his possession.

Distilled, these facts show that Welch complied with the decree by obtaining the required coverage for the children until at least August 11, 1991. Any expenses incurred before that date should have been presented to Welch's insurer so that the insurer could determine whether the expenses were covered and would be paid. Dugan's delay in presenting Welch with the medical bills denied Welch the opportunity to submit these expenses to his insurer. Welch cannot now recoup this lost opportunity. Therefore, he has suffered prejudice as a result of Dugan's delay.

After August 11, 1991, however, it appears that Welch no longer had insurance coverage for the children. Although the children apparently would be covered by the public aid

department, this coverage applied only when the children were in Welch's possession. This coverage is clearly inadequate under the decree. The decree awarded custody of the children to Dugan, required Welch to obtain medical and dental insurance for the children, and required Dugan to pay any uncovered expenses. Clearly, the decree contemplated that Welch's insurance would cover the children while they were in Dugan's possession.

Because Welch has not had insurance coverage for the children since August 11, 1991, he has not been prejudiced by Dugan's delay in enforcing her rights. If Dugan had, for example, handed Welch medical bills in October 1991, he would not have been able to submit those bills to an insurance company. As a matter of law, Welch has not suffered prejudice as to medical and dental expenses incurred after August 11, 1991. Therefore, the district court erred in finding that Dugan was wholly estopped from seeking repayment for medical and dental expenses.

On the present record, we are unable to determine the extent of Welch's liability. The decree, as we have stated, provides that Welch is responsible for maintaining medical and dental insurance and that Dugan is responsible for uncovered expenses. The decree does not assign responsibility for medical and dental expenses incurred in the absence of an insurance policy. We therefore remand the cause to the district court for an equitable determination of which party is liable for the expenses incurred after August 11, 1991.

Dugan next argues that the trial court erred in finding that the "other judgments of [Dugan] had been paid." Brief for appellee at 28. At the hearing on the motion to determine sums due, in addition to claiming sums due for child support and medical expenses, Dugan claimed that Welch owed her the following sums: (1) witness fees pursuant to a promise from Welch to Dugan, (2) attorney fees pursuant to the dissolution decree, and (3) interest on a "Contempt Judgment of July 28, 1988."

Addressing each of these sums in turn, we note that as a result of the hearing on the motion to determine sums due, the court ordered payment of the witness fees and the attorney fees.

Clearly, the court did not, as Dugan suggests, find that these sums had been paid. As to the contempt judgment, the court found that Welch had been ordered to pay Dugan $583 and that Welch had paid that amount. A document submitted into evidence and stipulated to by the parties purports to calculate "Principal and Interest on Contempt Judgment of July 28, 1988." This document shows that the principal amount of $583 was paid in February 1991, and shows interest due and owing in the amount of $128.03. The court did not err in finding that the principal had been paid.

Dugan also argues, however, that the court erred in failing to determine interest due on the judgments. We have already addressed the issue of interest on child support. The witness fees were first ordered to be paid at the hearing on the motion to determine sums due, and therefore, no interest on those fees had yet accrued. We need only consider whether interest should have been calculated on the attorney fees and on the contempt judgment.

A court of equity has discretion to allow or withhold interest as is reasonable and just, except in cases where interest is recoverable as a matter of right. *Kullbom v. Kullbom*, 215 Neb. 148, 337 N.W.2d 731 (1983); *Cumming v. Cumming*, 193 Neb. 601, 228 N.W.2d 296 (1975). Our statutes provide that "[j]udgment interest *shall* accrue on decrees and judgments for the payment of money from the date of rendition of judgment until satisfaction of judgment." (Emphasis supplied.) Neb. Rev. Stat. § 45-103.01 (Reissue 1988). The statutes also provide that the interest rate for "decrees and judgments for the payment of money" *shall* be 1 percentage point above certain bond yields, the exact rate to be distributed by the State Court Administrator to all Nebraska judges. See § 45-103. Based on the mandatory language of these statutes, we hold that a court of equity does not have discretion to withhold interest on decrees or judgments for the payment of money.

A decree or judgment for the payment of money is one which is immediately due and collectible where its nonpayment is a breach of duty on a judgment debtor. See, *Dryden v. Dryden*, 205 Neb. 666, 289 N.W.2d 525 (1980); *Cumming, supra*; *Patterson v. Spelts Lumber Co.*, 166 Neb. 692, 90 N.W.2d 283

(1958), *overruled on other grounds, Gillespie v. Hynes,* 168 Neb. 49, 95 N.W.2d 457 (1959). Interest does not accrue until the debt becomes due. See, *Dryden, supra* (interest on installment payment accrues when each individual payment becomes due); *Cumming, supra* (where divorce decree required wife to pay husband a portion of a future distribution from her father's estate, money was not due until wife received the distribution, and interest would not accrue until that date).

The court in the present action found due "[a]ttorney fees in the amount of $1,400.00 from [Welch] to [Dugan], being the balance of the $1,500.00 ordered November 14, 1988." November 14, 1988, was the date of the parties' dissolution hearing, which was followed on November 18 by the entry of a dissolution decree. The decree provided that Welch "should pay $1,500.00 toward [Dugan's] attorney fees. Said amount is to be paid within 90 days of this date."

The award of attorney fees is a judgment for the payment of money, the payment being due 90 days after November 18, 1988. As a matter of law, Dugan is entitled to interest on her award of attorney fees. The district court erred in failing to determine the amount of this interest and should determine that amount on remand.

The contempt judgment is not found separately in the record but is referenced in the dissolution decree. According to the decree: "On July 28, 1988, [Welch] was held in willful contempt and ordered to pay [Dugan's] expenses to retrieve the children from Virginia in the amount of $583.00." This award of travel expenses is a judgment for the payment of money, the payment being due on July 28, 1988. As a matter of law, Dugan is entitled to interest on her award of travel expenses. The district court erred in failing to determine the amount of this interest and should determine that amount on remand.

We note in passing that the district court also determined various sums due to Welch, his attorney, the guardian ad litem, and Dugan's present husband, Kevin Lyle. Those determinations have not been appealed, and we express no opinion as to whether interest is due thereon.

In the last sentence of her brief, Dugan asks this court to award her attorney fees and costs for appeal. Dugan has not

filed a separate motion for attorney fees, together with a supporting affidavit, as required by Neb. Ct. R. of Prac. 9F (rev. 1992).

In conclusion, we hold that the district court properly denied Welch's motion for new trial; that judgment is affirmed. The district court improperly sustained Dugan's motion to decline jurisdiction; that judgment is reversed. In ruling on the motion to determine sums due, the district court erred in its calculation of interest on delinquent child support payments, in finding that Dugan was wholly estopped from recovering medical and dental expenses, and in failing to determine the interest due on Dugan's awards of attorney fees and travel expenses. The judgment on the motion to determine sums due is reversed and the cause remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

BOSLAUGH, J., participating on briefs.