IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

KENNEDY V. KENNEDY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

EVA MARIE KENNEDY, NOW KNOWN AS EVA MARIE MARTIN, APPELLEE,

V.

RICHARD KENNEDY, APPELLANT, AND STATE OF NEBRASKA, INTERVENOR.

Filed July 2, 2019.    No. A-18-824.

Appeal from the District Court for Hall County: MARK J. YOUNG, Judge. Affirmed.

Shane M. Cochran, of Snyder, Hilliard & Cochran, L.L.O., for appellant.

Mitchell C. Stehlik, of Stehlik Law Firm, P.C., L.L.O., for appellee.

RIEDMANN, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

### INTRODUCTION

Richard Kennedy appeals from an order of the district court for Hall County that overruled the State's motion to modify child support and his motion to suspend child support. He also appeals from the court's order finding him in contempt for failing to pay $807.59 of his daughter's medical expenses. On appeal, Richard contends that his child support obligation ought to have been reduced and suspended and that he did not willfully violate a court order regarding the payment of his daughter's medical expenses. We affirm the district court's order for the following reasons.

### BACKGROUND

Richard and Eva M. Kennedy, now known as Eva M. Martin, were divorced in 2006 after two children were born to their marriage, a son born in 1997 and a daughter born in 2002. This

matter involves only their daughter, Teegan K., as their son is no longer a juvenile. On February 9, 2006, Richard was ordered to pay child support in the amount of $800 per month for the two minor children. Pursuant to a stipulation by the parties, on December 10, 2012, the court modified the support order and directed Richard to pay $1,248 per month for two children and $856 per month for one child.

On February 13, 2018, the State filed a complaint to modify the child support order, contending that there had been a material change in circumstances since the first modification was ordered on December 10, 2012. On May 1, 2018, Eva filed an application for order to show cause, alleging that Richard had not complied with the terms of a December 20, 2006, decree. We note that this decree was not included in our record on appeal. However, Eva filed an affidavit in support of her application for order to show cause and quoted the portion of the decree, which she claimed Richard had violated: "[Eva] shall pay the first $480 of medical expenses not covered by insurance per child per year. [Eva] shall pay 41% of the medical expenses not covered by insurance and [Richard] shall pay 59% of said medical expenses not covered by insurance." The subsequent order that modified child support (which is found in the record) did not disturb the original decree's division of medical expenses. Eva alleged that Richard had not paid his share of the unreimbursed medical expenses, that she had notified him of the expenses, and that the portion he owed her was $1,003.82. Eva also alleged that Richard had failed to provide health insurance for Teegan as required, which resulted in her incurring $1,479.10 in additional health insurance costs.

The court entered an order to show cause on May 2, 2018, directing Richard to appear on June 15 and show cause why he should not be held in contempt of court. That hearing was subsequently continued to July 25.

On July 25, 2018, the court held a hearing on the State's motion to modify child support and Eva's application for an order to show cause. Both Richard and Eva testified. The court received a number of exhibits, including Eva's 2015 and 2016 W2s and Richard's 2016 and 2017 tax returns. Copies of medical bills and a receipt demonstrating that they were provided to Richard by certified mail were also received.

At the time of the child support modification in 2012, Richard was working as a master electrician for Craft Electric in North Dakota. Craft Electric paid Richard $45 per hour, and he worked 40 hours per week. Richard thereafter moved to Sterling, Colorado, to open and manage a new branch office of Craft Electric. He bought a home in Oshkosh, Nebraska, and commuted to the business in Sterling. The Sterling business closed after approximately a year. Craft Electric offered Richard a job back in North Dakota, which he accepted. He worked there from approximately October or November 2015 until January 2016.

On January 22, 2016, Craft Electric laid off Richard due to lack of work, and Richard moved to Oshkosh permanently. Richard testified that he told Eva when he was laid off. He also told her that the health insurance coverage he provided for Teegan through his employer would end in March. Richard began providing insurance coverage for Teegan again in January 2018 by virtue of his current wife's employment, but he admitted that he never informed Eva nor did he provide her an insurance card.

Richard filed for unemployment benefits in 2016 and testified that he tried finding work near Oshkosh. He testified that he made inquiries to potential employers in several cities in

Nebraska, but never actually completed a job application. He further testified that he was unwilling to move or travel for work and that his current wife could not leave the state without permission from her son's father due to their custody arrangement.

Richard thereafter cashed out his 401K and started his own business, Kennedy Electric, L.L.C. He testified that he experienced business difficulties, including clients' nonpayment of accounts and equipment breakdowns. Richard's 2016 tax return shows an adjusted gross income of $50,889, which he testified was the value of his wages earned in January, the unemployment benefits he received, and the value of his 401K. Richard's 2017 tax return shows that Kennedy Electric recorded a loss of $30,658 for the year. He testified that he paid personal bills with accounts linked to the business. While Richard did not offer an estimate of the business's profits in 2018, he testified that the business had improved.

Eva testified that she began providing health insurance coverage for Teegan in January 2017 when Richard was laid off and that Richard did not notify her when he began providing coverage for Teegan at the beginning of 2018. Despite their decree governing Teegan's medical costs, Eva testified that she had not been reimbursed by Richard for $807.59 in medical bills that were due between May 2017 and January 2018. She sent copies of the bills to Richard by certified mail, which were received on October 2, 2017, according to a signed receipt. She testified that Richard had asked for explanations of benefits and that she provided copies to him by regular mail. Eva testified that Richard had made no payments to her on the medical bills. She acknowledged, however, that the bills had been reduced twice during the period between when she first sent them to Richard and the date of the hearing.

Teegan was placed in the State's care in a group home around April 1, 2018, because she was an "uncontrollable juvenile," according to Eva. Juvenile court records show that Teegan was ordered to complete the "Uta Halee" group home program as an extension of her probation following a charge of being a minor in possession. Uta Halee provides for Teegan's basic needs, including clothing, food, and hygiene items. Because Eva still has custody of Teegan and expected her to return home within 6 months to a year, she continued maintaining their home to which Teegan will return. Eva testified that she still paid for Teegan's medical care and attended her appointments while she lived in the group home. There was also mandatory family counseling at Teegan's group home, which Eva testified she planned to attend once it was scheduled. Additionally, Eva said she attends monthly team meetings and Teegan's court hearings. While the record reveals no pleadings filed by Richard with respect to the State's complaint to modify, he made an oral motion to suspend child support based on Teegan's absence from Eva's home.

On August 1, 2018, the district court entered judgment on the State's complaint to modify, Richard's motion to suspend child support, and the order to show cause. The court found that Richard's loss of income was the result of choices he made and that he had failed to prove that he was unable to find work as a master electrician elsewhere in the state or surrounding states. The court further found that Richard had not proved that Kennedy Electric would continue losing money in the future or that the business was incapable of producing income sufficient to satisfy his child support obligation. The court therefore overruled the State's complaint to modify child support.

The court also overruled Richard's oral motion to suspend child support, finding that Eva had a due process right to advance notice where no emergency existed. The court further found that Teegan still required support and noted that the State could file a motion to change the payee as provided by law.

Finally, the court found Richard to be in willful and contumacious contempt of the decree of dissolution for failing to pay his share of Teegan's medical expenses. The court found that Richard had the present ability to pay the $807.59 for Teegan's medical bills, which constituted his share under the divorce decree. The court ordered Richard to pay $807.59 within 60 days in order to purge himself from contempt. If the purge amount was not paid, he was to report to the Hall County Department of Corrections to serve a 30-day jail sentence.

Richard appeals. We note that the State is not involved in this appeal.

## ASSIGNMENTS OF ERROR

On appeal, Richard assigns the district court erred in (1) not reducing his child support obligation, (2) not reducing his child support obligation retroactively to the date the complaint to modify was filed, (3) not suspending his child support obligation, and (4) finding him in contempt for failing to pay his share of Teegan's medical expenses.

## STANDARD OF REVIEW

Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, we will affirm the trial court's decision absent an abuse of discretion. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013).

Whether a child support order should be retroactive is entrusted to the discretion of the trial court, and an appellate court will affirm its decision absent an abuse of discretion. *Johnson v. Johnson*, 290 Neb. 838, 862 N.W.2d 740 (2015).

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and the sanction to be imposed are reviewed for abuse of discretion. *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018).

## ANALYSIS

### COMPLAINT TO MODIFY CHILD SUPPORT

Richard argues on appeal that the district court abused its discretion by not reducing his child support obligation after his income shrunk on account of being laid off from his job as a master electrician and then opening his own business. Eva argues in reply that the district court did not err because Richard's income had diminished due to his own choice in obtaining lower-paying employment. The district court overruled the State's motion to reduce child support and held that Richard failed to show why he was unable to continue working as a master electrician elsewhere in Nebraska or a surrounding state and that his financial situation was the result of

choices he made. The court also found that Richard had failed to provide evidence that his business would continue to be unable to provide income sufficient to meet his child support obligation. We find no abuse of discretion in the court's decision.

A party seeking to modify a child support order must show that a material change in circumstances (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered. *Freeman v. Groskopf, supra*. Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent. *Incontro v. Jacobs*, 277 Neb. 275, 761 N.W.2d 551 (2009).

The Nebraska Child Support Guidelines state that "[i]f applicable, earning capacity may be considered in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities." Neb. Ct. R. § 4-204 (Reissue 2016). Use of earning capacity to calculate child support is useful "when it appears that the parent is capable of earning more income than is presently being earned." *Johnson v. Johnson*, 290 Neb. at 848, 862 N.W.2d at 749. Generally, earning capacity should be used to determine a child support obligation only when there is evidence that the parent can realize that capacity through reasonable efforts. *Johnson v. Johnson, supra*.

A reduction in child support is not warranted when an obligor parent's financial position diminishes due to his or her own voluntary wastage or dissipation of his or her talents and assets and a reduction in child support would seriously impair the needs of the children. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018). The party seeking the modification has the burden to produce sufficient proof that a material change of circumstances has occurred that warrants a modification and that the best interests of the child are served thereby. *Id*.

In the present case, we agree with the district court's implicit finding that there was no material change in circumstances warranting a modification of child support based on Richard's relatively unchanged earning capacity. The only change is that Richard is no longer willing to move or travel to find work and income similar to what he previously enjoyed. He has made the decision to try to build his own electrical business in Oshkosh rather than diligently search for more lucrative employment in other locations, whether within or outside of Nebraska. Richard's earning capacity is unchanged. He admitted that if he chose, he could relocate to other parts of the country and obtain similar employment. Richard testified to only three locations where he made inquiries as to employment, Scottsbluff, North Platte, and Paxton. However, he stated he did not submit any applications for employment. Richard noted that he was limited by his wife's inability to leave Nebraska due to the custody order regarding her son. However, he did not explain how that order precluded him from seeking employment throughout the state of Nebraska, including those cities that may have greater employment opportunities.

As a master electrician working in North Dakota and Colorado, Richard earned $45 per hour and worked 40 hours per week. After starting his own business, Kennedy Electric, Richard's tax returns reflected income of approximately $50,000 in 2016 and a loss of approximately $30,000 in 2017. He testified that the business was performing better in 2018 but declined to

estimate its profitability. Richard provided no evidence to evaluate his business' probable future performance. However, when asked whether he had sought other employment recently, he testified that he had been busy and that it was hard to look for work when you own a business. This testimony would seem to indicate that his business is indeed performing better. We agree with the district court that neither the State nor Richard has proven that his business will continue to lose money or that it is not capable of supporting the current child support order.

We recognize that Richard's reduced income was not wholly the result of his own actions. His previous employer, Craft Electric, noted that it laid off Richard through no fault of his own but due to market conditions resulting in a lack of work. Nevertheless, we also recognize that Richard's reduced income was not wholly the result of market conditions, either. Richard made the decision to remain in Oshkosh and start his own business rather than engage in a diligent search that would likely have resulted in similar income to what he enjoyed in the past. He also acknowledged that he did not continue looking for work after starting his own business despite its struggles with profitability since inception. Richard testified that he had purchased a home in Oshkosh, that his wife could not move out of Nebraska without permission from her child's father, and that he was unwilling to accept positions that would require him to move away from Oshkosh or to travel. Richard may have valid reasons for wanting to stay in Oshkosh. However, he cannot voluntarily reduce his income and expect his daughter to bear the burden of that decision. The decision to make only a cursory search for employment that would pay a wage similar to what he has enjoyed in the past and instead start a new business is a choice for which Richard, not Teegan, must bear the burden.

Richard urges us to compare this matter with our decision in *Collins v. Collins*, 19 Neb. App. 529, 808 N.W.2d 905 (2012), but any favorable comparison is clearly inapposite. In *Collins*, we reversed the district court's upward modification in the mother's child support obligation, which was based on imputing minimum wage as her earning capacity in spite of her demonstrated inability to find employment that paid the minimum wage. *Id*. The mother was unemployed but had made significant efforts to obtain employment, including applying for "at least 10 jobs per week" across various fields and in two separate states. *Id*. In two months, she had applied for more than 32 jobs. *Id*. Nevertheless, she remained unemployed. *Id*. Richard, however, has not similarly demonstrated an inability to obtain employment at his prior earning capacity. Richard's efforts to find comparable employment as a master electrician fall far short of the efforts we reviewed in *Collins*. Our record reflects that Richard was unwilling to move or even consider employment elsewhere in Nebraska or in other states, and there is no indication that Richard submitted even one application. Instead, he began operating his own business.

Because Richard's financial position diminished due to his own choices, there was no material change in circumstances warranting a reduction in child support. Moreover, Richard did not provide evidence to show that his business will continue being unable to provide the income needed for him to fulfill his child support obligation. We therefore cannot find that the district court abused its discretion in overruling the State's motion to modify child support.

RETROACTIVE CHILD SUPPORT REDUCTION

Richard also argues that the district court should have ordered that his claimed reduction in child support be retroactive to the date the state filed the complaint to modify. Having found no error in the district court's decision to deny the complaint to modify, there is also no error in the court's decision not to backdate any modification.

MOTION TO SUSPEND CHILD SUPPORT

Richard argues that his child support obligation should be suspended while Teegan is in the State's care at Uta Halee. Eva argued in reply that it is in Teegan's best interests that child support not be suspended because Teegan still needs financial support even while living in a group home. The district court overruled Richard's motion to suspend child support. We affirm.

In support of his argument, Richard cites cases in which a noncustodial parent's child support obligation was suspended as a "last resort" and remedy in response to a custodial parent's acts to deprive a noncustodial parent of visitation, *Welch v. Welch*, 246 Neb. 435, 519 N.W.2d 262 (1994), and in which suspension of child support was the only remedy that "fit the mischief" of the custodial parent, *Biesecker v. Biesecker*, 190 Neb. 808, 212 N.W.2d 576 (1973). Here, there is no evidence that Eva acted to deprive Richard of visitation with Teegan. Therefore these cases have no bearing on the present matter.

The district court's reasoning for denying Richard's motion to suspend child support was twofold: that Eva had a due process right to advance notice of Richard's motion in the absence of an emergency and that Teegan still requires support from Richard. The same rationale underpinning the declination to modify child support--namely, that Richard is capable of providing such support and that Teegan requires support from Richard--underpin the declination to suspend child support.

As in all matters relating to minor children, the best interests of the child are our paramount concern. Suspending Richard's child support obligation while Teegan resides in Uta Halee does not serve Teegan's best interests. In particular, we note that Teegan will need adequate housing when she is discharged from Uta Halee. Thus, Eva must maintain a home for Teegan's return, and a portion of Richard's child support obligation goes toward housing Teegan. Moreover, Teegan continues having medical and counseling appointments and court hearings while living at Uta Halee, and Eva's presence on such occasions is most appropriate. Eva's attendance as Teegan's guardian comes at an expense to Eva in terms of transportation, medical costs, and the time away from other obligations. Because Teegan still requires child support from Richard, we conclude that the district court did not err in denying Richard's motion to suspend his child support obligation.

CONTEMPT FINDING

Richard asserts that the district court erred in finding him in contempt for failing to pay his share of Teegan's medical expenses. He argues that he did not willfully violate the previous court order governing the payment of medical expenses because Eva provided him different numbers and outdated medical bills. Eva argues in response that Richard willfully violated the court order through a wholesale refusal to pay any of the medical bills she submitted to him, his share of which

totaled $807.59 at the time of the hearing. Upon our review, the district court did not err in finding Richard in contempt for his failure to pay his share of Teegan's medical expenses.

As a preliminary matter, we note that the record does not include a copy of the original decree dissolving the parties' marriage. As a general rule, it is incumbent upon the appellant to present a record supporting the errors assigned; absent such a record, an appellate court will affirm the lower court's decision regarding those errors. *Hynes v. Good Samaritan Hosp.*, 285 Neb. 985, 830 N.W.2d 499 (2013). While we are cognizant of Richard's failure to include the decree in our record, we nonetheless find, based on the record we have, that we can review the contempt issue within set parameters. Richard's argument narrowly focuses on the amount of the medical bills to which the decree's formula would be applied in calculating his obligation. He does not dispute that he owes *some* amount nor does he contest the formula used to determine his obligation. He only disputes the medical bills' accuracy and whether the bills were provided to him prior to the court's contempt finding. Thus, we will review the matter under the assumption that Eva correctly quotes from the parties' decree in her affidavit in support of her application for order to show cause. We therefore evaluate Richard's assigned error relating to contempt under the assumption that the parties' decree directed Richard to pay 59 percent of Teegan's medical expenses after the first $480 of which were paid by Eva.

Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *Sickler v. Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016). Willful disobedience is an essential element of contempt; "willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Id*. Contempt proceedings may both compel obedience to orders and administer the remedies to which a court has found the parties to be entitled. *Id*.

In the present case, Eva provided Richard with copies of Teegan's medical bills by certified mail on October 2, 2017, which was confirmed by a receipt of delivery. Richard was fully aware of the medical bills because he subsequently asked Eva for explanations of benefits, which she provided as well. He also provided one of the providers information regarding his financial situation. He testified that he believed the purpose for the provider's inquiry was to determine whether a reduction in the bill would be made. Eva testified that Richard's share of those bills was $807.59 under the terms of the governing court order. Richard disputes the bills' amount as they were presented to him, and Eva acknowledged that the bills had been reduced by care providers twice since she originally provided copies to Richard. Notwithstanding the possibility of bills being reduced, Richard made no payment whatsoever either reimbursing Eva or directly toward any bill's balance prior to the contempt hearing in July 2018, nor did he take any meaningful action to independently ascertain any obligation he may have. Given Richard's lack of action, we cannot find that the district court abused its discretion by finding Richard in contempt. Moreover, our review of the bills contained in exhibit 16 demonstrates that Richard's obligation under the terms of their divorce decree--as quoted by Eva in her affidavit in support of her application for order to show cause--was $807.59 as Eva testified. We therefore find that the district court did not abuse its discretion in finding Richard in contempt for failing to fulfill his obligation to pay a portion of Teegan's medical expenses pursuant to the previous court order.

CONCLUSION

For the foregoing reasons, we affirm the order of the district court, which denied the State's motion to modify child support and make such modification retroactive, denied Richard's motion to suspend child support, and held Richard in contempt for willfully failing to pay his portion of Teegan's medical expenses.

AFFIRMED.